**John H. PETRARCA**

v.

**FIDELITY AND CASUALTY INSURANCE COMPANY.**

No. 2005–2–Appeal.

Supreme Court of Rhode Island.

Oct. 31, 2005.

 

Jina N. Petrarca, for Plaintiff.

Michael J. Reed, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

An insurance company's refusal to honor a claim for damages to a borrowed car gives rise to this dispute. In February 1991, North American Auto Sales and Leasing (North American), a fictitious business entity of Providence Auto Body, Inc., loaned a 1984 Rolls Royce to the plaintiff, John H. Petrarca, whose vehicle was undergoing repairs. While driving the borrowed Rolls Royce, Petrarca was involved in an accident in which the vehicle was damaged. Petrarca, who is also the president of Providence Auto Body, contends that because he had executed a temporary loan agreement with North American pursuant to G.L.1956 § 31–3–20(c), North American is insulated from any liability arising from the accident and that he is personally liable to North American for the cost of repairs. He therefore claims that he is entitled to be indemnified by Fidelity and Casualty Insurance Co. (Fidelity), his personal insurer and the defendant in this case. Fidelity denies that it is liable under its insurance contract with Petrarca.

Petrarca filed suit against Fidelity in December 2000, and on October 26, 2004, the Superior Court granted summary judgment in favor of Fidelity. The court held that the loan agreement between North American and Petrarca did not satisfy the requirements of § 31–3–20(c), which otherwise would have shielded North American from liability. The motion justice agreed with Fidelity's argument that because of the faulty agreement North American or its insurer, not Petrarca or his insurer, should bear the cost of repairing the car. And, because Petrarca neither owned the car nor presented evidence that he was liable for the cost of repairs, the court held that he had suffered no damages, even if a breach of the insurance contract were proven. Petrarca timely appealed. This case came before the Supreme Court for oral argument on September 27, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be decided at this time.

### Facts and History

On February 8, 1991, John H. Petrarca brought his car to Providence Auto Body, Inc., for repairs. While his car was being repaired, Petrarca borrowed a 1984 Rolls Royce from North American Auto Sales and Leasing, a fictitious entity of Providence Auto Body. Pursuant to § 31–3–20 [1],

1. General Laws 1956 § 31–3–20 provides as follows:

"**Operation with manufacturer's or dealer's plates.** (a) A manufacturer or dealer owning any vehicle of a type otherwise required to be registered under this chapter, or any bona fide employee of a manufacturer or dealer, or any other appropriate persons as defined by this chapter, or by regulations issued pursuant to this chapter, may operate or move the

a statute that applies when auto dealers lend vehicles under such circumstances, Petrarca and North American executed a temporary loan agreement for the car and Petrarca affixed his personal license plates to the Rolls Royce. Petrarca claims that on February 15, 1991, an unidentified motorist struck him from behind as he was driving the borrowed car. Neither Petrarca nor any other person was injured in the accident, but according to a repair estimate, the Rolls Royce sustained $27,000 in damages. After the accident, Petrarca submitted a claim to his insurer, Fidelity. Although Petrarca's policy provided coverage for a substitute car while his own vehicle was being repaired, Fidelity denied the claim. At that time, the carrier contended that Petrarca was the owner, not the borrower, of the 1984 Rolls Royce, and that that vehicle was not insured under his policy.[2]

On December 4, 2000, almost ten years after the accident, Petrarca filed this action against Fidelity. In his original com-

vehicle upon the highways for any purpose without registering the vehicle upon condition that the vehicle has displayed on it, in the manner prescribed in § 31–3–18, a special plate issued to the owner as provided in §§ 31–3–23—31–3–25.

"(b) Any manufacturer or dealer may loan a motor vehicle, the special plates, or both to any person for the purpose of demonstration of a motor vehicle, when a motor vehicle owned by the person is undergoing repairs, or when the person has purchased a motor vehicle the registration of which by him or her is pending, and in any case for not more than twenty (20) days in any year, provided the person operating the loaned motor vehicle or a motor vehicle bearing such loaned number plate shall furnish proof to the dealer or manufacturer that he or she has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned vehicle for which the operator would have been liable if he or she had also been the owner. This proof of insurance shall be set forth on a form to be obtained from the division of motor vehicles and the form shall be subject to any conditions that the division of motor vehicles may impose; provided that, in the event the person loaned the vehicle does not have an insurance policy in effect, then any liability or property damage shall be covered by the dealer's insurance policy.

"(c) Any manufacturer or dealer may also loan a motor vehicle, under the circumstances outlined in this section, and the vehicle may be affixed plates belonging to the person operating the loaned motor vehicle when the number plates would be of the same classification. The dealer may issue a temporary certificate of registration of the vehicle and the vehicle may be operated upon the public highways under this certificate for a period of twenty (20) days from the date of issuance. The certificate shall be issued on a form obtained from the division of motor vehicles and shall be issued under any conditions that the division of motor vehicles may impose. The certificate shall be carried in the vehicle for which it is issued and the operator or person in control of the vehicle shall display the certificate for examination upon demand of any proper officer. Any damage to any person or property caused by the operation of the loaned vehicle shall be the responsibility of the operator or person in control of the vehicle and the dealer or manufacturer shall be in no way liable for it.

"(d) Every manufacturer or dealer shall keep a record of each loaned vehicle or number plate showing the date loaned, date returned, and the name and operator's license number of the person operating any loaned vehicle or vehicle with the loaned number plates. This record shall be available during business hours for examination by any police officer or inspector designated by the administrator of the division of motor vehicles. Any licensed dealer or manufacturer may operate or cause to be operated by a bona fide employee a motor vehicle for his or her personal use and for use in connection with his or her business as a dealer or repairer for any length of time, provided that the dealer's insurance policy shall at all times cover the motor vehicle while in use by the employee."

2. Confusion surrounding ownership of the car was compounded by the fact that Petrarca was also the president of Providence Auto Body, the company that owns North American, the entity that loaned him the car.

plaint, Petrarca stated that he personally owned the damaged Rolls Royce. On November 8, 2001, however, Petrarca amended his complaint to reflect that North American was the owner of the car. In both the original and amended complaint, Petrarca alleged that he had personally incurred damages as a result of Fidelity's denial of coverage under the policy.

After Petrarca filed his amended complaint, Fidelity moved for summary judgment. In his ruling, the motion justice held that the temporary loan agreement between Petrarca and North American was defective in that it did not satisfy the statutory proof-of-insurance requirement that would have shielded North American from liability because Petrarca mistakenly wrote "American Casualty" instead of "Fidelity Casualty" on the loan agreement form.[3] The motion justice also held that Petrarca had not incurred damages because the Rolls Royce was owned by North American, and Petrarca had failed to present any evidence that he had been sued by the owner or that a claim had otherwise been made against him.

### Standard of Review

When reviewing a grant of summary judgment, this Court conducts a *de novo* review and employs "[t]he same standards applicable to the trial justice." *Town of Cumberland v. Rhode Island In-* *terlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1214 (R.I.2004). "Accordingly, we will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)). In opposing a motion for summary judgment, the nonmoving party "carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996)).

### Analysis

Petrarca asserts four arguments on appeal. First, he argues that the motion justice erred when he failed to specify which statute he relied upon when he granted Fidelity's motion for summary judgment. Second, Petrarca contends that even if the motion justice correctly based his decision on § 31–3–20(c), his application of that statute was incorrect because, according to Petrarca, § 31–3–20(c) does not require proof of insurance. Third,

---

**3.** In granting summary judgment, the motion justice was not clear whether he relied on § 31–3–20, which applies to auto dealers, or § 31–3–20.1, which applies to repair shops. The court explained:

> "Under the statute, and I would say that there may be some dispute as to whether or not this was a [vehicle] loaner made by a dealer or a [vehicle] loaner made by a body repair shop, but, in either instance, the matter would be covered either by general laws 31–3–20, or 31–3–20.1, the former being operation with dealer plates, the latter being operation with auto body repair shop

plates. In either instance, it is incumbent upon the dealer or auto body repair shop to obtain * * * proof that he or she has liability and property damage insurance * * *." The motion justice further explained that "[i]n the absence of such proof [of insurance], it appears to me, under the statute, that the auto body repair shop or the dealer's insurer should cover the loss, and not the borrower's insurer * * *." We note, however, that Petrarca's accident and claim took place in 1991, yet the Legislature did not enact § 31–3–20.1, the body shop statute, until 1997. Therefore, it does not apply to this action.

Petrarca urges that even if § 31–3–20(c) incorporates the proof-of-insurance requirement set forth in § 31–3–20(b), whether North American failed to obtain adequate proof is a question of fact. Finally, Petrarca maintains that the motion justice erred when he held that Petrarca did not suffer damages because Petrarca had waived the statute of limitations and therefore still was at risk for a claim for the cost of repairing the borrowed vehicle. Moreover, Petrarca argues that his fiduciary duty to the owner of the vehicle (North American) obligates him to recover sums owed to the company, and his failure to do so subjects him to personal liability.

▬ Petrarca's first three arguments ask this Court to determine whether the motion justice applied the correct statute and, if so, whether his interpretation of the statute was correct. Although the parties disagree about the requirements of § 31–3–20(c), the essence of Petrarca's complaint is a breach of contract claim. As such, Petrarca must not only prove both the existence and breach of a contract, he also must prove that the defendant's breach thereof caused him damages. *Rendine v. Catoia*, 52 R.I. 140, 142, 158 A. 712, 713 (1932). Even if this Court were to accept Petrarca's interpretation of § 31–3–20(c) as correct, thereby providing a foundation for his assertion of a contractual breach, his claim must fail if he has not offered competent proof of damages. *See Brito v. Capone*, 819 A.2d 663, 666 (R.I. 2003) (party opposing summary judgment cannot rest on "bare allegation[s]" to create factual dispute over damages); *General Accident Insurance Company of America v. Cuddy*, 658 A.2d 13, 17–18 (R.I.1995) (merely stating that damages exist without

proof thereof is not sufficient to survive summary judgment).

In *Thibodeau v. Metropolitan Property and Liability Insurance Co.*, 682 A.2d 474, 475 (R.I.1996), the plaintiffs appealed summary judgment in favor of the defendant, asserting that the trial court had applied the wrong version of an amended statute. In that case, we held that regardless of which version of the statute applied, the plaintiffs had failed to produce "competent and reasonably definite evidence to raise a material issue of fact" regarding damages. *Id.* In the absence of such evidence, it was not necessary for this Court to address the plaintiffs' statutory argument "[b]ecause plaintiffs' case fail[ed] under either version [of the statute]." *Id.* Similarly, if Petrarca is unable to produce "competent and reasonably definite evidence" concerning damages caused by Fidelity's alleged breach of contract, we need not address the statutory arguments in this case. *See id.*

▬ Fidelity contends that even if North American satisfied the dealer-immunity requirements of § 31–3–20(c), Petrarca cannot be found liable for damage to the Rolls Royce because any claim against him for loss to the vehicle is barred by the statute of limitations. In *Finck v. Aetna Casualty & Surety Co.*, 432 A.2d 680 (1981), we held that an insurer "is liable for sums that its insured is legally obligated to pay; however, it cannot be held liable * * * [if its insured] is under no obligation to pay."[4] *Id.* at 682. The auto dealer in *Finck* was not liable because it had satisfied the dealer-immunity requirements of § 31–3–20(c). Here, however, whether North American complied or failed to comply with § 31–3–20(c) is not relevant if Petrarca's legal liability, and

---

**4.** The facts in *Finck* differ from this case because the plaintiff in that case sought to recover from the auto dealer's insurer rather than his own insurer. Nevertheless, our hold-ing in *Finck* is instructive because it makes clear that an insurer's liability derives from its insured's.

thus Fidelity's obligation to indemnify him, has lapsed under the statute of limitations.

■ Indeed, Petrarca does not contest that the time period for North American to sue him for damage to the Rolls Royce has lapsed under the applicable statute of limitations. Instead, Petrarca contends that he has waived the statute of limitations, thereby subjecting himself to liability.[5] We do not agree. North American has not filed suit against Petrarca for damage to the Rolls Royce, and Petrarca has presented us with nothing that would lead us to conclude that the applicable statute of limitations has been extended. The hypothetical possibility that North American *could* file suit and Petrarca *could* waive the statute of limitations is too speculative to suffice as competent proof of damages. *Brito*, 819 A.2d at 666 (requiring proof of damages to survive summary judgment); *cf. White v. LeClerc*, 468 A.2d 289, 290 (R.I.1983) ("damages must rest upon legally competent evidence and may not be the product of speculation or conjecture") (citing *Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 314, 377 A.2d 237, 240–41 (1977)).

Petrarca further argues that his fiduciary duty to North American and/or Providence Auto Body requires him to recover money owed to the corporation. He maintains that if he fails to either repay or recover sums owed to North American for repairing the Rolls Royce, he will have breached that duty. Petrarca contends that this breach potentially subjects him to personal liability, and that such contingent liability meets the test of damages, entitling him to indemnification from Fidelity.

We agree with Petrarca that his failure to repay or recover sums owed to North American may be an actionable breach of his fiduciary duty.[6] This duty, however, arises from Petrarca's role as president, and not from his role as the customer who borrowed a car and returned it in a damaged condition. The fact that North American's principal and customer happen to be the same person is a situation of Petrarca's own making. Fidelity is not the insurer of Petrarca's fiduciary obligations, and his personal automobile policy is not intended to cover him for shortcomings in connection with North American's business. But more importantly, no action for such breach has been filed against Petrarca, and his concerns about lawsuits that *could* be filed is too speculative to suffice as evidence of damages. *See Cuddy*, 658 A.2d at 18 (holding summary judgment appropriate when plaintiff fails to offer any proof of damages).

As the motion justice stated in his order:

"[T]he only plaintiff in this case is Mr. John H. Petrarca. According to the motion, there has not been any evidence that Mr. Petrarca suffered any loss in connection with the damage to the 1984 Rolls Royce owned by [North American]. I have to accept the allegation of

---

5. There is nothing in the record indicating that Petrarca has waived the applicable statute of limitations. During argument before the motion justice, Petrarca's counsel indicated that "[Petrarca] *can* waive the statute of limitations." (Emphasis added.) However, Petrarca's counsel conceded before this Court that he had not actually executed a formal waiver or tolling agreement.

6. On October 3, 2001, plaintiff's motion to substitute parties and name North American

as plaintiff was denied. On October 26, 2004, during oral argument on Fidelity's motion for summary judgment, the motion justice asked plaintiff's counsel why North American had not instituted suit to recover for damages to the car. The plaintiff's counsel responded that he did not know why Petrarca's previous attorney had failed to do so and noted that "because the statute [of limitations] has run out, that's where I am now."

the [amended] complaint as true; that this 1984 Rolls Royce was owned by [North American], and, accordingly, any loss to that vehicle would have been loss occasioned by the owner of that vehicle, [North American], and not Mr. Petrarca personally. If there were some evidence that Mr. Petrarca was liable for that loss or that [North American] has held Mr. Petrarca responsible or liable for that loss, then that evidence has not been presented to the [c]ourt in opposition to this motion for summary judgment."

We agree with the motion justice that Petrarca has not personally suffered any loss in connection with damage to the Rolls Royce. North American, after a period of almost fifteen years, has yet to file suit against him for damage to its vehicle. By virtue of the lapse of time, and in the absence of any cognizable claim for damages to property or persons involved in Petrarca's accident, we hold that the motion justice was correct in holding that Petrarca has not suffered any damages. Even if Fidelity breached its insurance contract with Petrarca, there is utterly no evidence of damages incurred by him. Therefore, we need not address the parties' arguments concerning § 31–3–20.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court, to which we return the papers in this case.