# United States Court of Appeals
## For the First Circuit

No. 04-1772

MIRIAM JORGE ET AL.,

Plaintiffs, Appellants,

v.

DONALD H. RUMSFELD, SECRETARY, UNITED STATES
DEPARTMENT OF DEFENSE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Torruella, Selya and Lynch,

Circuit Judges.

Marie Elsie López-Adames, with whom González-López & López-Adames was on brief, for appellants.
Fidel A. Sevillano Del Rio, Assistant United States Attorney, with whom H. S. Garcia, United States Attorney, and Miguel A. Fernandez, Assistant United States Attorney, were on brief, for appellee.

April 21, 2005

**SELYA**, **Circuit Judge**.  Plaintiff-appellant Miriam Jorge brought a discrimination suit against her government employer.[1] The district court ruled that Jorge's cause of action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, was time-barred and that her claim under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a)(1), was foreclosed because she had not exhausted her administrative remedies.  After careful perscrutation of the briefs and record, we affirm the judgment below.

## I. BACKGROUND

This appeal follows a dismissal for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).[2]  Consequently, we accept the well-pleaded facts as true

---

[1]Jorge's husband, the couple's conjugal partnership, and Jorge's ward are also plaintiffs and appellants.  Because their claims are purely derivative, we treat Jorge as if she were the sole plaintiff and appellant.  Our decision is, of course, binding on all parties.

[2]In the district court, the government originally filed a hybrid motion to dismiss "pursuant to Rule 12(b)(6) and Rule 56(c) of the Federal Rules of Civil Procedure."  Its reply to Jorge's opposition confirmed this ambivalence, requesting that "this entire action be dismissed, or in the alternative, that [the district court] grant summary judgment to defendants."  In ruling on the motion, the district court treated it as a motion to dismiss.  See Jorge v. Rumsfeld, Civ. No. 03-1224, slip op. at 1 (D.P.R. Mar. 9, 2004) (unpublished).  Before us, the government has briefed the case in terms of the Rule 12(b)(6) standard.  Because that standard is more favorable to Jorge than the Rule 56 standard, see Collier v. City of Chicopee, 158 F.3d 601, 602-03 (1st Cir. 1998), we follow the district court's lead and apply the jurisprudence of Rule 12(b)(6).

and indulge all reasonable inferences therefrom in the plaintiff's favor. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). We augment those facts with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 14 (1st Cir. 2003); see also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). Moreover, the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint. See Clorox Co. P.R. v. Proctor & Gamble Comm'l Co., 228 F.3d 24, 32 (1st Cir. 2000).

Applying these tenets to the instant record enables us to mine certain additional nuggets of information. The correspondence between Jorge's attorney and the Equal Employment Opportunity Commission (EEOC) — most notably, the right-to-sue letter upon which Jorge predicates her claim of exhaustion — falls within this parameter. So to does Jorge's notice of retirement. With this in mind, we rehearse the relevant facts.

Between 1973 and 2001, Jorge worked for the Army and Air Force Exchange Services (AAFES), a commissary program for military personnel administered by the Department of Defense. In 1979, she became the retail manager of Toyland, an AAFES-operated store on the premises of Fort Buchanan (which is located in Guaynabo, Puerto Rico). Jorge remained in this position for nearly two decades until, at the age of fifty-one, she elected to make a lateral transfer to the Base Muñiz Shoppette (which is located at a National Guard installation some twelve miles away). Jorge claims, and the defendants do not contest, that she was a model employee who, both at Toyland and at the Shoppette, consistently exceeded sales and performance targets set by senior management.

Jorge began working at the Shoppette in 1998. Soon thereafter, AAFES assigned Debra Baynard to oversee its operations in the region. The relationship between Baynard and Jorge quickly turned frosty. From Jorge's point of view, Baynard altered the workplace by insisting upon, and rigorously enforcing, an English-only policy and by undermining Jorge's managerial authority in insidious ways. When Jorge complained about Baynard's policies and practices, Baynard allegedly made derogatory comments about her age.

The situation came to a head early in 2000 when, during Jorge's vacation, Baynard unilaterally transferred her back to her former position at Toyland and filled the position she had occupied

-4-

at the Shoppette with a younger, less experienced man who spoke only English.  After Jorge's vacation ended on March 4, 2000, she met with Baynard, who served formal notice of the job shift without offering Jorge any explanation for it.

Jorge refused to report for duty at Toyland.  Instead, she exhausted her accrued vacation time and sick leave while trying to get herself reinstated at the Shoppette.  Even after her efforts proved unsuccessful, she refused to assume her duties at Toyland. In due course, AAFES informed her that, pursuant to settled agency regulations, her extended absence had led to the forfeiture of any right she may have had to regain her position at the Shoppette. Jorge was given two options at that juncture:  return to Toyland or take early retirement.  She chose the latter option and, on April 17, 2001, submitted a notice of "involuntary early retirement," retroactive to March 30, 2001.

## II.  TRAVEL OF THE CASE

Jorge did not let sleeping dogs lie.  Her first initiative came in the form of a notice letter, dated May 8, 2001, sent on her behalf to the EEOC.  That letter announced her intention to sue for age discrimination. Following the expiration of a thirty-day waiting period, the agency granted Jorge leave to sue under the ADEA.  See 29 U.S.C. § 633a(d).  Several months then passed with no further action.

On April 1, 2002, Jorge commenced an action in the federal district court, seeking relief under, inter alia, the ADEA and Title VII. In her complaint, Jorge alleged that she was humiliated both by Baynard's ageist comments and by the English-only requirement, and that the involuntary transfer to Toyland exacerbated this state of affairs. She also characterized her early retirement, for the first time, as a constructive discharge.

Jorge's complaint named a bevy of defendants, including the Secretary of Defense, AAFES, Baynard, two other AAFES managers who had assisted Baynard in facilitating the transfer, the spouses and conjugal partnerships of the individual defendants, and four unidentified defendants (apparently sued as place-holders). Jorge experienced difficulty in serving the individual defendants (other than Secretary Rumsfeld). She discussed this problem with the Assistant United States Attorney (AUSA) who was handling the case. The AUSA suggested that she dismiss the action without prejudice, see Fed. R. Civ. P. 41(a)(1), get her ducks in a row, and then refile. Eventually, Jorge embraced that suggestion and moved to dismiss the complaint without prejudice. The government consented, and the district court granted the motion on September 27, 2002.

Jorge commenced a new action, identical to the first in all respects, on March 4, 2003. That action ended in the order of dismissal that undergirds this appeal. We pause to explicate the district court's reasoning.

The court first determined that Jorge's supplemental claims were not cognizable because the ADEA and Title VII comprised the exclusive remedies for claims of age, gender, and national origin discrimination. Jorge v. Rumsfeld, Civ. No. 03-1224, slip op. at 4 (D.P.R. Mar. 9, 2004) (unpublished). The court then concluded that the Secretary of Defense was the only proper defendant in regard to the ADEA and Title VII claims and dismissed the action as to all the other defendants. Id. at 5. These rulings are not contested on appeal, and we do not discuss them.

With respect to Jorge's Title VII claim against the Secretary, the lower court noted that Jorge's sole contact with the EEOC was her letter indicating an intent to sue under the ADEA. Id. at 6. It thereupon dismissed her Title VII claim without prejudice for failure to "initiate[], much less exhaust[]," her administrative remedies. Id. at 7. Finally, the court noted that Jorge's ADEA claim was subject to a two-year statute of limitations. See Rossiter v. Potter, 357 F.3d 26, 27 (1st Cir. 2004). In light of that limitations period, the district court held that Jorge, who had instituted the operative action a full three years after her involuntary transfer, had sued too late. Jorge, slip op. at 8. For that reason, the court dismissed the ADEA claim with prejudice. Id. This appeal followed.

**III.  ANALYSIS**

On appeal, Jorge limits her assault to the district court's disposition of her ADEA and Title VII claims.  We consider these lines of attack separately.

**A.  The ADEA Claim**.

The district court held that Jorge's ADEA claim was time-barred.  Id.  That holding rested on a determination that the cause of action accrued at the time of the involuntary transfer rather than at the time of Jorge's retirement.  See id. (concluding that the transfer constituted "the gravamen of plaintiff's ADEA claim").  Jorge assigns error to that determination.  We consider her argument, mindful that when, as now, an order of dismissal is premised on the running of the applicable limitations period, we may affirm only if the Rule 12(b)(6) record "leave[s] no doubt that [the] asserted claim is time-barred." LaChapelle, 142 F.3d at 509.

The ADEA requires that personnel actions affecting most employees who are forty years of age or older be free from age-based discrimination.  29 U.S.C. § 633a(a).  In one sense, the ADEA treats federal employees as a class apart from other employees. See Rossiter, 357 F.3d at 28-29 (discussing the statutory scheme). That difference implicates the ADEA's enforcement mechanism: whereas most employees must first exhaust administrative remedies before instituting an ADEA action, see 29 U.S.C. § 626(d), a federal employee has the option of bypassing administrative

-8-

remedies entirely and suing directly in the federal district court. Id. § 633a(c). A federal employee who wishes to avail himself of this bypass option must notify the EEOC of his intent to sue within 180 days following the occurrence of the allegedly unlawful practice and then observe a thirty-day waiting period before filing suit. Id. § 633a(d). The EEOC is required to notify the putative defendant of the employee's intent to sue, but it has no authority to forestall the litigation. Id.

In this instance, it is beyond peradventure that Jorge gave notice of her intent to sue and that the thirty-day cooling-off period elapsed. But because an action prosecuted pursuant to 29 U.S.C. § 633a(c) is subject to a two-year limitations period, Rossiter, 357 F.3d at 34-35, it is less clear whether Jorge brought her action within the prescribed time. The uncertainty arises out of a difference of opinion about the accrual date.

On the one hand, the government posits — and the district court agreed — that the last independent act of alleged age discrimination occurred when Baynard unilaterally transferred Jorge to Toyland. On the other hand, Jorge argues that her retirement should be treated as an independent act of discrimination. The choice of an accrual date makes a dispositive difference here. Jorge commenced this action on March 4, 2003. If the accrual date is the date of the transfer, which occurred during, or just after the end of Jorge's vacation (for simplicity's sake, we shall use an

approximate date of March 4, 2000), her ADEA claim is time-barred. If however, the accrual date is the date of her retirement (which took place on April 17, 2001, retroactive to March 30, 2001),[3] her ADEA claim is timely.

Jorge's argument proceeds on the basis of a supposed constructive discharge. That is theoretically feasible: a constructive discharge can constitute an adverse employment action under the ADEA. See, e.g., Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000) (explaining that a charge will lie if the employer has "engag[ed] in a calculated, age-inspired effort to force an employee to quit"). By the same token, an offer of an early retirement package sometimes can be a vehicle for a constructive discharge: a worker who is presented with such a package can be said to be constructively discharged if her refusal to accept the offer will result in work or working conditions so onerous or disagreeable that a reasonable person would feel compelled to forsake employment rather than to submit herself to manifold indignities. Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993). The rationale behind this rule is rooted in a desire to ensure that an employer bent on dismissing an employee for age-related reasons cannot skirt Congress's clear prohibition on such discrimination by indirection. See Suarez, 229 F.3d at 54.

---

[3]Because the former date is potentially more helpful to Jorge, we assume arguendo that it was the date of her retirement.

Although Jorge would have us believe that the employer's offer of early retirement here was tantamount to a constructive discharge (and, thus, an independent act of discrimination giving rise to her ADEA claim), her complaint — even when read with full deference to its factual allegations — fails to bear out this assertion. Jorge's troubles evidently stemmed from the sequence of events exemplifying the harassing behavior of her new supervisor. That sequence of events began in 1998 and culminated in the order transferring her to Toyland. Jorge refused to accept that transfer, even though it entailed no loss of pay, benefits, status, or the like.[4] Because that transfer entailed no tangible diminution, it did not, without more, sink to the level of indignity necessary to make out a prima facie case of constructive discharge. See Suarez, 229 F.3d at 56. Here, there is no "more"; Jorge's complaint is devoid of any allegations indicating that, by accepting the transfer, she would have been subjected to the kind of indignities against which the ADEA stands guard.

Nor does Jorge allege a discriminatory motive behind AAFES's directive that she report to Toyland or take early retirement. When Jorge refused to accept the transfer, she did not resign, but remained nominally in AAFES's employ, drawing salary

---

[4]In her appellate briefs, Jorge asserts for the first time that AAFES had been planning to close the Toyland store and that her transfer was thus merely an opening gambit en route to the eventual elimination of her job. We decline to consider this previously unraised and inherently speculative assertion.

and benefits from her accumulated vacation time and sick leave while protesting the transfer administratively. By all accounts, it was the refusal to report for work and the passage of time that led to AAFES's ultimatum, and Jorge does not suggest that this action was anything other than standard operating procedure. Thus, the Toyland transfer constituted the last independent discriminatory act visited upon her — in the district court's phrase, it constituted the "gravamen of [p]laintiff's complaint," Jorge, slip op. at 8 — and the employer's ultimatum that she accept the transfer or retire early was merely an inevitable consequence of that action. It follows that the ADEA limitations period runs from the date the transfer order was made.

The most pertinent authority for this proposition is the Supreme Court's decision in Delaware State College v. Ricks, 449 U.S. 250 (1980). There, a college denied tenure to a faculty member who alleged that the denial was attributable to national origin discrimination. Id. at 252-54. The administration then offered the faculty member a one-year contract, not subject to renewal. Id. at 253. The offer was accepted and, after the year had run, the faculty member left the school's employ. He then sued. The Court deemed the case time-barred, rejecting the faculty member's contention that his employment discrimination claim accrued from the expiration of his terminal contract. Id. at 257-58. The Court held that the plaintiff had neither alleged nor

-12-

proved "that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure." Id. at 258. Absent such an allegation, the plaintiff's loss of employment was merely an "inevitable consequence" of the earlier (time-barred) tenure decision, and could not constitute a separately actionable event. Id. at 257-58. In short, "the critical datum is the point in time at which the discriminatory act occurred," not the point at which its effects became most injurious. Morris v. Gov't Dev. Bank, 27 F.3d 746, 749 (1st Cir. 1994).

We find the same deficiency in Jorge's complaint. She has not pled that the choice ultimately given her by AAFES differed discriminatorily from the way in which the organization handled personnel matters involving other, similarly situated employees (i.e., those who had refused to accept lateral transfers and who had exhausted their vacation and sick leave time). Nor has she explained how the employer's return-or-retire ultimatum differed in any respect from the employer's standard response to younger, similarly situated employees. Here, as in Ricks, the mere continuity of the employment relationship, in and of itself, is not enough "to prolong the life of a cause of action." Ricks, 449 U.S. at 257; accord Campbell v. BankBoston, 327 F.3d 1, 11 (1st Cir.

-13-

2003); <u>Am. Airlines, Inc.</u> v. <u>Cardoza-Rodriguez</u>, 133 F.3d 111, 123 (1st Cir. 1998).[5]

Jorge makes a last-ditch effort to resuscitate her ADEA claim by arguing that the operative tolling date was April 1, 2002 (the date when she filed her first action, later dismissed) rather than March 4, 2003 (the date when she commenced the action presently on appeal). This argument is hopeless: March 4, 2003 was the correct tolling date for the statute of limitations calculation.

A voluntary dismissal without prejudice results in a <u>tabula</u> <u>rasa</u>. It renders the proceedings null and void and leaves the parties in the same position as if the action had never been prosecuted. <u>Nat'l R.R. Passenger Corp.</u> v. <u>Int'l Ass'n of Machinists</u>, 915 F.2d 43, 48 (1st Cir. 1990); <u>In re Piper Aircraft Distrib. Sys. Antitrust Litig.</u>, 551 F.2d 213, 219 (8th Cir. 1977). Consequently, "a prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice." <u>Chico-Vélez</u> v. <u>Roche Prods., Inc.</u>, 139 F.3d 56, 59 (1st Cir. 1998).

---

[5]Jorge's reliance on <u>Flaherty</u> v. <u>Metromail Corp.</u>, 235 F.3d 133, 138-39 (2d Cir. 2000), in which an employee who had alleged a constructive discharge was allowed to start the limitations clock for her discrimination claim from the date that she submitted her letter of resignation, misses the mark. There the plaintiff had remained at work after being notified of her "looming termination" and continued, up to the date of her resignation, to suffer indignities attributable to a discriminatorily hostile work environment. <u>See</u> <u>id.</u> at 138. In this case, the last act of discrimination was the transfer order itself. <u>Flaherty</u> is, therefore, inapposite.

Equally unavailing is Jorge's contention that the statute of limitations should be equitably extended due to her attorney's misplaced reliance on the AUSA's suggestion that she dismiss the first action because of the difficulty she was experiencing in locating some of the individual defendants. While the doctrine of equitable estoppel may be invoked when "a defendant's conduct causes a plaintiff to delay bringing an action or pursuing a claim he or she was entitled to initiate by law," Kelley v. NLRB, 79 F.3d 1238, 1247 (1st Cir. 1996), this requires affirmative misconduct, see id.; see also Lavery v. Marsh, 918 F.2d 1022, 1028 (1st Cir. 1990). Jorge makes no such claim — nor would the pleaded facts support one.

To say more about the ADEA claim would be pointless. For the foregoing reasons, we affirm the district court's dismissal of that claim as time-barred.

### B. **The Title VII Claim**.

The district court dismissed Jorge's Title VII claim without prejudice for failure to exhaust administrative remedies. Jorge, slip op. at 7. Jorge assigns error to this ukase as well. She is fishing in an empty stream.

Unlike the ADEA, Title VII does not spare federal employees from running the administrative gauntlet. An individual who has suffered discrimination at the hands of a federal employer on account of race, color, religion, gender, or national origin

-15-

must file an administrative complaint with the EEOC within 180 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-15(c)(1) & 16(c). The employee may commence a civil action against her employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing.[6] Id. § 2000e-5(f)(1). The employee then must sue within ninety days. Id. The ninety-day period begins to run from the time that the Attorney General notifies the employee either that the EEOC has dismissed the charge or that the government has failed to address the employee's grievance (by reaching a negotiated settlement or by commencing litigation on her behalf). See id.; see also Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 3 (1st Cir. 2001). It is thus apparent that "[j]udicial recourse under Title VII . . . is not a remedy of first resort." Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003).

In light of the statutory scheme, it is unsurprising that, in a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door. See, e.g., Duncan v. Manager, Dep't of Safety, 397 F.3d 1300, 1314 (10th Cir. 2005); Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024-25 (8th Cir. 2004); Taylor v. Books A Million,

_____

[6]A federal employee may, of course, intervene in an action brought by the EEOC on her behalf. See 42 U.S.C. § 2000e-5(f)(1).

Inc., 296 F.3d 376, 378-79 (5th Cir. 2002); see also Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999). Exhaustion has two key components:  the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973); McKinnon v. Kwong Wah Rest., 83 F.3d 498, 504 (1st Cir. 1996).

Jorge says that she filed a charge with the EEOC within the prescribed period and that the EEOC, in turn, sent her a right-to-sue letter.  But that is a half-truth.  The charge was not a charge at all, but, rather, a notice of intent to sue.  Perhaps more importantly, both the so-called "charge" and the subsequent right-to-sue letter concerned only her ADEA claim; she never filed a Title VII claim with the EEOC, and her attempt to piggyback a non-existent Title VII filing on an ADEA filing does not hold water.

A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge.  See Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993).  This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency.  Cf. Clockedile, 245 F.3d at 6 (holding

-17-

that retaliation claims are preserved if the retaliation is "reasonably related to and grows out of" the discrimination charged in the administrative complaint). Jorge's filings do not pass that test.

The ADEA and Title VII cover separate and distinct subjects. See Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999) (explaining that age discrimination claims are not cognizable under Title VII). Moreover, the two statutes operate in different administrative universes vis-à-vis federal employees. Compare 29 U.S.C. § 633a(c), with 42 U.S.C. § 2000e-16(c). A merger of the two schemes by judicial fiat would destroy the very purpose of exhaustion by depriving the EEOC of the ability to resolve Title VII disputes in the conference room rather than in the courtroom. See 42 U.S.C. § 2000e-5(b) ("[T]he Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."). Accordingly, we hold that neither Jorge's ADEA filing nor the ensuing right-to-sue letter exhausted her administrative remedies for purposes of her Title VII claim.

Jorge has a fallback position. Even if the district court was correct in holding that her administrative journey was incomplete with respect to her Title VII claim, Jorge seeks to persuade us that she nonetheless may find relief under the doctrine of equitable tolling. We are not convinced.

-18-

To be sure, an employee's failure to follow the administrative route to its due completion does not automatically doom a Title VII claim. The charge-filing requirement is mandatory but not jurisdictional; therefore, it is subject to a host of equitable exceptions. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Bonilla, 194 F.3d at 278. In deference, however, to Title VII's carefully crafted temporal limitations, we invoke those exceptions sparingly and interpret them narrowly. See Bonilla, 194 F.3d at 278; Jensen v. Frank, 912 F.2d 517, 521 (1st Cir. 1990). Thus, an employee is generally not entitled to avail herself of the doctrine of equitable tolling if the procedural flaw that prompted the dismissal of her claim is of her own making. See Bonilla, 194 F.3d at 279 ("Generally speaking — peculiar circumstances may leave some wiggle room — equitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control (such as when her employer actively misleads her, and she relies on that misconduct to her detriment).").

Jorge pretty much ignored this issue in the proceedings before the district court. She raises it in this court, but she has offered no developed argumentation as to why her case should not come within the general rule rather than within the long-odds

exception to it.  Consequently, she is not entitled to invoke the equitable tolling doctrine here.[7]

**IV.  CONCLUSION**

We need go no further.  Discerning no error in the district court's well-reasoned decision, we affirm the judgment below.

**Affirmed**.

---

[7]Jorge makes a feeble attempt to rely on the continuing violation doctrine.  <u>See</u>, <u>e.g.</u>, <u>Nat'l R.R. Passenger Corp.</u> v. <u>Morgan</u>, 536 U.S. 101, 115-17 (2002); <u>Mack</u> v. <u>Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 182 (1st Cir. 1989).  That doctrine relates to statutes of limitations and has no bearing on relief from Title VII's exhaustion requirements.