DECISION
Before this Court is Defendants Van Liew Capital, Inc. (VLC) and Alfred B. Van Liew's (Van Liew) Super. R. Civ. P. 12(b)(6) Motion to Dismiss Rhode Island Resource Recovery Corporation's (RIRRC or Corporation) five-count Complaint. RIRRC's Complaint alleges: (1) breach of contract; (2) breach of fiduciary duty; (3) aiding and abetting breach of fiduciary duty; (4) negligence; and (5) indemnity. In their motions, VLC and Van Liew contend that RIRRC's Complaint fails to adequately set forth or support the claims against them.
 I Facts and Travel
RIRRC, formerly known as Rhode Island Solid Waste Management Corporation (RISWMC), is a quasi-public corporation established by legislative enactment in 1974. See Complaint ¶ 1. RIRRC, with its principal place of business in Johnston, Rhode Island, owns and operates Johnston's Central Landfill. Id. In 2008-2009, the Rhode Island Bureau of Audit (Bureau) conducted an investigation of RIRRC. On September 22, 2009, the Bureau issued an audit report (Audit Report) highlighting numerous violations, breaches, and wrongful acts that allegedly occurred at RIRRC during the relevant period. Id. The instant matter is the result of *Page 2 
the Bureau's review of the procurement process in connection with, and the named Defendants' management of, RIRRC's trust funds and pension plan (see infra). Specifically, RIRRC alleges that the named Defendants, as the investment manager and trustee of the Central Landfill Remediation Trust Fund (Remediation Trust Fund) and EPA Closure Trust Fund (Closure Trust Fund), as well as the pension fund manager for the Money Purchase Pension Plan (Pension Plan), breached their contractual and fiduciary duties through unsuitable investment choices and by failing to disclose conflicts of interest.
Van Liew Trust Company (VLTC), established in 1984, is a Rhode Island corporation with its principal place of business in Providence, Rhode Island. Id. ¶ 2. VLTC is authorized by the Rhode Island Board of Bank Incorporation to engage in the business of a trust company under the General Laws of the State of Rhode Island. See VLTC's Answer Counterclaim ¶ 2. VLC is the parent of VLTC. Id. ¶ 3. Van Liew was one of fifteen subscribers to form VLTC. Id. ¶ 4.
 The Remediation Trust Fund
On April 28, 1995, the Corporation issued RFQ/RFP No. 924 seeking proposals for investment management services for the Remediation Trust Fund.[1] RFQ/RFP No. 924 stated:
 "this project is to procure investment managements services to assist the Corporation to maximize the rate of return on funds, subject to the proper consideration of preservation of capital that is appropriate for public funds. The selected Respondent/s will directly manage the Corporation's investment portfolio, subject to guidelines provided by the Corporation regarding risk tolerance and projected cash flow needs." See Complaint ¶ 20. *Page 3 
It further required a responding party to certify that "[n]o officer, agent or employee of RIRRC ha[d] a pecuniary interest in the Proposal or ha[d] participated in contract negotiations on the part of the Respondent." Id.
In response to RFQ/RFP No. 924, VLTC submitted a proposal on May 31, 1995 (Proposal No. 924). Id. ¶ 21; seealso VLTC's Answer Counterclaim ¶ 21. At the time of submission, John St. Sauveur (St. Sauveur) was a member of the RIRRC Board of Commissioners (RIRRC Board) and a member of the VLTC Board of Directors. Id. ¶ 22. RIRRC alleges that despite the required certification, this conflict was not disclosed.Id. ¶ 23.
On April 26, 1996, following a review of the submitted proposals, the RIRRC Board passed a motion authorizing a contractual agreement with VLTC to establish and manage the Remediation Trust Fund.Id. ¶ 26. According to RIRRC, St. Sauveur participated in discussions before and during the bidding process, and although he abstained from the vote, he failed to recuse himself or disclose the conflict of interest. Id.
On August 6, 1996, RIRRC and VLTC entered into the Central Landfill Remediation Trust Fund Agreement (Remediation Trust Fund Agreement) establishing the Remediation Trust Fund. See
Remediation Trust Fund Agreement. The purpose of the trust was to "obtain, hold, invest and disburse funds to be utilized for the payment of certain obligations of [RIRRC] in connection with the remediation of the Central Landfill Superfund site, in Johnston, Rhode Island." Id. ¶ 2. Pursuant to the Remediation Trust Fund Agreement, VLTC agreed to "invest and reinvest the Trust Estate solely in accordance with written instructions given from time to time by the Settlor, which instructions shall be consistent with the then current investment policies of [the RIRRC Board]."Id. ¶ 4. *Page 4 
On September 26, 1996, VLTC entered into a second agreement with RIRRC to furnish investment management and trustee services (1996 Agreement). See Complaint ¶ 32; seealso 1996 Agreement. Under the 1996 Agreement, VLTC agreed to furnish all trustee services required and to perform all work in strict conformity with: (1) the RFQ/RFP No. 924; (2) Proposal No. 924; and (3) the Remediation Trust Fund Agreement. See
1996 Agreement ¶ 2. The parties agreed that VLTC, as part of its annual fee, would receive twenty basis points (.20%) on the first $5,000,000 and fifteen basis points (.15%) on any amount over $5,000,000. Id. ¶ 3. Additionally, VLTC agreed to
 "indemnify, save harmless, and defend [the] Corporation from and against any and all liabilities, claims, penalties, forfeitures, suits and the costs and expenses incident thereto . . . which it may incur . . . or pay out as a result of . . . (i) VLTC's breach of any term or provision of this Agreement; or (ii) any negligent or willful act or omission of [VLTC], its employees, or its agents; or (iii) any violation by [VLTC] of any applicable law, rule or regulation." Id. ¶ 4.
VLTC remained RIRRC's investment advisor and trustee for the Remediation Fund until January 2008.
 The Closure Trust Fund
On July 18, 1997, RIRRC issued RFQ/RFP No. 946 seeking proposals for investment management and trustee services in connection with the Closure Trust Fund.[2] See Complaint ¶ 36. RFQ/RFP No. 946 stated:
 "this project is to procure investment managements services to assist the Corporation to maximize the rate of return on funds, subject to the proper consideration of preservation of capital that is appropriate for public funds. The selected Respondent/s will *Page 5 
directly manage the Corporation's investment portfolio, subject to guidelines provided by the Corporation regarding risk tolerance and projected cash flow needs." Id. ¶ 36.
Additionally, any party submitting a proposal was required to certify that "[n]o officer, agent or employee of RIRRC ha[d] a pecuniary interest in the Proposal or ha[d] participated in contract negotiations on the part of the Respondent." Id.
VLTC submitted a proposal on August 8, 1997 (Proposal No. 946).Id. ¶ 37. At the time of submission, St. Sauveur was a member of the RIRRC Board and the VLTC and VLC Board of Directors.Id. ¶¶ 38-39. On January 13, 1998, after reviewing the submitted proposals, the RIRRC Board authorized a contractual agreement with VLTC to establish and manage the Closure Trust Fund.Id. ¶ 42. According to RIRRC, although St. Sauveur abstained from the vote, he participated in the discussions during the bidding process and failed to disclose the conflict.Id. ¶¶ 44-45.
On March 24, 1998, RIRRC and VLTC entered into the Trust Agreement (Closure Trust Fund Agreement) establishing the Closure Trust Fund.See Closure Trust Fund Agreement. The Closure Trust Fund was established "for the benefit of the State of Rhode Island to assure closure and/or post-closure care of the facilities covered under th[e] Agreement. Id. § 3. As trustee, VLTC agreed to "make payments from the [Closure Trust] Fund as [RIRRC] shall direct . . . to provide for the payment of the costs of closure and/or post-closure care of the facilities covered by th[e] Agreement. . . ." Id. § 4. VLTC was also required to "invest and reinvest the principal and income of the [Closure Trust] Fund and keep [it] invested as a single fund, without distinction between principal and income, in accordance with general investment policies and guidelines which [RIRRC] may communicate in writing to [VLTC] from time to time. . . ." Id. § 6. *Page 6 
When discharging its duties, VLTC was required to
 "act solely in the interest of the beneficiary and with the care, skill, prudence, and diligence under the circumstances then prevailing which persons of prudence, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims. . . ." Id.
For its services, VLTC was entitled to "reasonable compensation . . . as agreed upon in writing from time to time with [RIRRC]."[3] Id. § 12. Finally, VLTC was indemnified,inter alia, against any liability "in connection with any act or omission, made in good faith in the administration of the [Closure Fund] Trust, or in carrying out any directions by [RIRRC] or the Director of DEM." Id. § 18.
VLTC remained RIRRC's investment advisor and trustee for the Closure Trust Fund until January 2008.
 The Pension Plan
In 1977, RIRRC created the Pension Plan for its employees.See Complaint ¶ 50. On February 25, 2002, RIRRC entered into a new plan (2002 Plan) which amended the Pension Plan in its entirety.Id.
On June 2, 2004, RIRRC issued RFQ/RFP No. 840 seeking a pension fund manager to provide administrative and investment management services for the Pension Plan. See Complaint ¶ 52;see also VLTC's Answer Counterclaim ¶ 52. In pertinent part, RFQ/RFP No. 840 required each respondent to: (1) certify that "no officer, agent, [or] employee of RIRRC" had a conflict of interest; and (2) indemnify RIRRC "from any and all loss, suits, penalties, costs, *Page 7 
liabilities, and expenses . . . arising out of claims . . . caused by or resulting from the Respondent's negligence or willful misconduct or breach of th[e] Agreement." See
Complaint ¶ 52. VLTC submitted a proposal on June 30, 2004 (Proposal No. 840). Id. ¶ 53. At the time, St. Sauveur was a member of the RIRRC Board and a member of the VLTC and VLC Board of Directors. Id. ¶ 54.
On September 21, 2004, following a review of the submitted proposals, the RIRRC Board authorized negotiations with VLTC for pension fund services. Id. ¶ 58. RIRRC alleges that although St. Sauveur abstained from voting, he failed to recuse himself or disclose his conflict of interest. Id. ¶¶ 59-60. On December 1, 2004, RIRRC and VLTC executed an Agreement (Pension Plan Agreement) by which VLTC agreed to perform services in connection with the Pension Plan.
In accordance with the Pension Plan Agreement, the terms of RFQ/RFP No. 840 and Proposal No. 840 were incorporated by reference and made a part of the agreement "as fully and to the same effect as if they had been included." See Pension Plan Agreement ¶ 2. Additionally, VLTC agreed to "indemnify and hold [RIRRC] harmless from any and all loss, damages, suits, penalties, costs, liabilities, and expenses . . . arising out of any claim . . . caused by or resulting from [VLTC's] negligence or willful misconduct or breach of this Agreement." Id. ¶ 6. In exchange for its services, VLTC would receive compensation not to exceed sixty basis points. Id. ¶ 3.
VLTC remained pension fund manager until its services were terminated in December 2007. *Page 8 
 II Standard of Review
It is well settled in Rhode Island that the role of a Rule 12(b)(6) motion is merely to test the sufficiency of a complaint. See Toste Farm Corp. v. Hadbury, Inc.,798 A.2d 901, 905 (R.I. 2002) (quoting R.I. Emp't Sec. Alliance,Local 401, S.E.I.U., AFL-CIO v. State Dep't ofEmp't Training, 788 A.2d 465, 467 (R.I. 2002)). A complaint must give fair and adequate notice of the plaintiff's claim, but in most cases it need not contain a high degree of factual specificity.See, e.g., Hyatt v. Village House Convalescent Home,Inc., 880 A.2d 821, 824 (R.I. 2005) (per curiam). "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor."Pellegrino v. Rhode Island Ethics Comm'n,788 A.2d 1119, 1123 (R.I. 2002) (quoting Rhode Island Affiliate,ACLU v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989)). A court should grant such a motion "only when it is clear beyond a reasonable doubt that the [non-movant] would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena, M.D. v. Microsoft Corp.,796 A.2d 461, 463 (R.I. 2002).
Generally, because "the sole function of a motion to dismiss is to test the sufficiency of the complaint [or counterclaim]," a court's review is confined to the four corners of that pleading.Palazzo v. Alves, 944 A.2d 144, 149 (R.I. 2008) (quotingBernasconi, 557 A.2d at 1232); see alsoBarrette v. Yakavonis, 966 A.2d 1231, 1234 (R.I. 2009). Indeed, "[i]f a trial justice, in ruling on a motion to dismiss, considers matters outside the scope of the complaint [or counterclaim], the motion is converted into a motion for summary judgment." Foley v. St. Joseph Health Servs. of R.I.,899 A.2d 1271, 1278 (R.I. 2006) (quoting Ouimette v. Moran,541 A.2d 855, 856 (R.I. 1988)). However, this rule is not absolute.See, e.g., Bowen Court Assocs. v. Ernst Young,LLP, *Page 9 818 A.2d 721, 725-26 (R.I. 2003) (noting that under Super. R. Civ. P. 10(c), a motion justice may properly consider and refer to documents attached as exhibits to a pleading when deciding a Rule 12(b)(6) motion); see also Robert B. Kent etal., Rhode Island Civil and AppellateProcedure § 10:3 (West 2006) (stating that "a copy of a written instrument, attached to a pleading as an exhibit, is a part of the pleading for all purposes").
Moreover, "the First Circuit Court of Appeals has adopted a `practical, commonsense approach' for determining what materials may be properly considered on a motion to dismiss." Roy v.General Elec. Co., 544 F. Supp. 2d 103, 107 (D.R.I. 2008) (quoting Beddall v. State St. Bank Trust Co.,137 F.3d 12, 16 (1st Cir. 1998)). "Under this approach, a court may consider not only the complaint, but also the `facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice.'"Roy, 44 F. Supp. 2d at 107 (quoting Jorge v. Rumsfeld,404 F.3d 556, 559 (1st Cir. 2005)). Additionally, when a "`complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings.'" Roy, 44 F. Supp. 2d at 107 (quotingBeddall, 137 F.3d at 17); see alsoJorge, 404 F.3d at 559 (stating that "the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint"). *Page 10 
 III Discussion A Counts I V: Breach ofContract Indemnity[4]
In connection with their Motions to Dismiss Counts I and V, VLC and Van Liew contend that they were not parties to the Contracts, and consequently, there is no contractual relationship to serve as a basis for RIRRC's breach of contract or indemnity claim. Conversely, RIRRC asserts that at a minimum, VLC is a party to the 1996 Agreement because that agreement incorporated by reference the terms of Proposal No. 924 which, on its face, appears to be a submission by both VLTC and VLC.[5] Further, they argue that the Court should treat VLTC as an alter ego, pierce the corporate veil, and thereby hold both VLC and Van Liew liable for the alleged contractual breaches.
It is well settled that a breach of contract claim requires the existence of a valid contract, a breach of the contract, and damages resulting from the breach. See Petrarca v.Fidelity Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005). A party establishes a breach of contract claim by demonstrating that another party has "violat[ed] a contractual obligation, either by failing to perform [a] promise or by interfering with another party's performance." Demicco v. Medical Assocs. of R.I., Inc., No. 99-251L, 2000 WL 1146532, at *2 (D.R.I. 2000). Therefore, separate and apart from determining whether RIRRC has adequately alleged a violation or breach of a *Page 11 
contract, the Court must, at the outset, determine whether RIRRC has sufficiently pled the existence of a valid contract between RIRRC and either VLC and/or Van Liew.
Here, RIRRC has collectively pled its allegations against the named Defendants — generally asserting that Van Liew, VLC, and VLTC each executed and were parties to the Contracts — and therefore, the Complaint, on its face, is of no avail. See
Complaint ¶¶ 32, 62, 70 ("RIRRC entered into four separate contracts with Van Liew"). Although upon a cursory examination of the Complaint it may appear that these generalized allegations satisfy the pleading requirements necessary to implicate VLC and Van Liew; in actuality, these allegations are directly contradicted by subsequent specific allegations specifying that the Contracts were executed solely by Van Liew on behalf of VLTC. Seeid. ¶¶ 34, 49, 63. Accordingly, while the Court is mindful that a complaint must be reviewed in the light most favorable to the pleading party, the Court also may not ignore the well-settled notion that "[s]pecific averments in a pleading are usually given precedence over general ones regarding the same matter."Lord v. Shaw, 665 P.2d 1288, 1289 (Utah 1983) (citingHall v. Delvat, 95 Ariz. 286, 389 P.2d (1964)) (explaining that the "specific averments are deemed to supplant, limit and control the general allegations"); see also 61A Am. Jur. 2d Pleadings § 94 (2010) ("Although a court must review a complaint in a light most favorable to the plaintiff, with every inference drawn in his or her favor, in those instances where a party pleads generally, and then goes further and pleads specifically on the same subject, the specific allegations control); 71 C.J.S. Pleading § 88 (2010) ("Where there are contradictory or inconsistent allegations in a pleading, the conflict is to be resolved against the pleader."). For that reason, the Court finds that the Complaint, on its face, may fail to adequately allege a contractual relationship beyond VLTC. *Page 12 
This, however, does not end the Court's inquiry. See
17A C.J.S. Contracts § 463 (2010) ("The signatures on a contract, however, cannot alone be looked to for the purpose of determining who are the parties to a written contract."). Indeed, contracts are formed through mutual assent which is evidenced by the objective intent of the parties. Filippi v. Filippi,818 A.2d 608, 623-24 (R.I. 2003) (citing Smith v. Boyd,553 A.2d 131, 133 (R.I. 1989)) (explaining that objective intent is determined by the external manifestation of a party or parties' intent). In addition to mutual assent, a valid contract requires mutuality of obligation, which is achieved when both parties are bound legally by the making of reciprocal promises.Filippi, 818 A.2d at 624 (citing Centerville Builders,Inc. v. Wynne, 683 A.2d 1340, 1341 (R.I. 1996)). Therefore, while the Complaint may fail to allege that either VLC or Van Liew were parties to the Contracts, the Contracts and Proposal No. 24 may indicate otherwise. See Roy,44 F. Supp. 2d at 107 (explaining that a court may look beyond the pleadings and rely on "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice"). Indeed, a review of the Proposal No. 924 indicates that the proposal was a response by both VLC and VLTC. See Proposal No. 924 ("Van Liew Capital and Van Liew Trust Company . . . responds to your request and acknowledges that all conditions contained in your RFQ/RFP can be incorporated into any resulting contract."). Moreover, pursuant to Proposal No. 924 — incorporated by reference with the 1996 Agreement — VLC is specifically obligated to "meet with [RISWMC] before structuring the portfolio to review the investment policy and, in writing, [] describe their assessment of [RISWMC's] investment risk parameters." Id. For that reason, the Court finds that with respect to Counts I and V, VLC has failed to establish beyond a reasonable doubt that RIRRC would not be entitled to relief. *Page 13 
Although RIRRC has set forth a set of circumstances by which VLC may be subject to contractual liability, where, as here, the Complaint's allegations — and the Contracts themselves — indicate that they were executed by Van Liew on behalf of VLTC, the Court finds that RIRRC has failed to set forth a basis to impose personal liability upon Van Liew under the Contracts.See 17A C.J.S. Contracts § 464 (2010) ("[A]n individual who signs a corporate contract and indicates the name of the corporation and the nature of his or her representative capacity on the contract is generally not subject to personal liability on the contract"). Moreover, while RIRRC may seek to impose liability on Van Liew by piercing the corporate veil, the Court finds that RIRRC may not rely on its opposition papers to satisfy its pleading requirements.[6] See Bruno v. Criterion Holdings,Inc., 736 A.2d 99, 100 (R.I. 1999) (affirming the Superior Court's dismissal of a breach of contract claim where plaintiff's complaint failed to allege a potentially viable claim under the theory of piercing the corporate veil).
Similarly, RIRRC's allegations that VLC "is an affiliate of [VLTC]" and Van Liew "is the Managing and Founding Partner" of VLTC are simply inadequate. See Complaint ¶¶ 3-4. Indeed, the Complaint neither mentions alter-ego theory nor requests that the Court pierce the corporate veil. Furthermore, it fails to set forth any allegations demonstrating that VLC or VLTC were so organized and controlled as to make them mere instrumentalities of Van Liew, or that Van Liew did not treat them as separate and distinct entities.See U.S. v. Kayser-Roth Corp., Inc.,103 F. Supp. 2d 74, 84 (D.R.I. 2000) (explaining that the corporate form may be *Page 14 
disregarded where principals fail to treat the corporation as a separate and distinct entity by not adequately capitalizing it, failing to hold directors' and shareholders' meetings, and/or co-mingling corporate and non-corporate assets); National HotelAssoc. v. O. Ahlborg Sons, Inc., 827 A.2d 646, 652 (R.I. 2003) (affirming that piercing the corporate veil is appropriate where there is such a unity of interest and ownership between the corporation and its owners, that their separate identities and personalities no longer exist). Accordingly, having failed to allege a set of circumstances upon which the Court could deem Van Liew, in his individual capacity, a party to the Contracts, the Court finds beyond a reasonable doubt that RIRRC would not be entitled to relief against Van Liew in connection with Counts I and V of its Complaint.
 B Count II: Breach of Fiduciary Duty
To prevail on a claim for breach of fiduciary duty, a party must establish "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."Griffin v. Fowler,260 Ga. App. 443, 445, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003);Lyons v. Midwest Glazing,265 F. Supp. 2d 1061, 1076 (N.D. Iowa 2003); 37 Am. Jur. 2d Fraud Deceit § 31 (2010) (stating that the elements of a breach of fiduciary duty claim are "(1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary"). In the instant matter, Defendants assert that RIRRC has failed to proffer a set of facts from which the Court could find a fiduciary duty flowing from VLC and/or Van Liew to RIRRC. Therefore, they aver, RIRRC has failed to set forth a claim for breach of fiduciary duty.
It is well settled that the existence of a fiduciary duty does not depend on the existence of a contract. See Bullmore v.Ernst Young Cayman Islands,45 A.D.3d 461, 463, 846 N.Y.S.2d 145, 148 (N.Y. App. Div. 2007) *Page 15 
(explaining that "[p]rofessionals such as investment advisors, who owe fiduciary duties to their clients, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties," since in "these instances, it is policy, not the parties' contract, that gives rise to a duty of care"). Rather, a fiduciary relationship may be found between two parties "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." See Restatement 2d Torts § 874 (2010). Indeed, a fiduciary relationship "arises whenever confidence is reposed on one side, and domination and influence result on the other" or "when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other." Lyons,265 F. Supp. 2d at 1076 (noting that a fiduciary relationship may be demonstrated by any of the following examples: "the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another").
In its Complaint, RIRRC alleges that VLC and Van Liew's fiduciary duties, and RIRRC's reliance thereon, arose not only out of the inherent nature of the parties' relationship, but also by virtue of their right to invest RIRRC's accounts and to give advice on those investments.[7] See Complaint ¶ 81 ("[A]s investment manager, trustee and pension fund manager, and because of the influence [VLC, VLTC, and Van Liew] held over RIRRC's *Page 16 
investment strategies for its EPA Trust Funds and Pension Plan, a relationship of trust and confidence existed between the parties, and Van Liew was subject to a fiduciary duty toward RIRRC."). While the Court is mindful that this allegation alone may be insufficient to set forth a claim against the Defendants, where, as here, the Court is also presented with Proposal No. 924 — listing both Van Liew and VLC as part of the staffing responsible for investment management services — the Court cannot say beyond a reasonable doubt that RIRRC would not be entitled to recover from the Defendants.See Proposal No. 924. (indicating that VLC would meet with RISWMC and assess its investment risk parameters and Van Liew would be a principal person committed to managing and monitoring the performance of RISWMC's portfolios). For that reason, the Court denies VLC and Van Liew's Motions to Dismiss Count II of the Complaint.
 C Count III: Aiding and Abetting Breach of FiduciaryDuty
In Count III of its Complaint, RIRRC alleges that VLC and Van Liew aided and abetted St. Sauveur's breach of his fiduciary duty by failing to disclose his conflict of interest. It is well settled that "[a]iding and abetting a breach of fiduciary duty requires proof that: (1) there was a breach of fiduciary duty; (2) the defendant knew of the breach; and (3) the defendant actively participated or substantially assisted in or encouraged the breach to the degree that he or she could not reasonably be held to have acted in good faith." Professional Servs. Grp., Inc. v. Town ofRockland, 515 F. Supp. 2d 179, 192 (D. Mass. 2007) (citingArcidi v. Nat'l Ass'n of Gov't Emps., Inc.,447 Mass. 616, 623-24, 856 N.E.2d 167, 174 (2006)). Accordingly, in their Motions to Dismiss, VLC and Van Liew contend that RIRRC has failed to allege that they *Page 17 
provided substantial assistance or encouragement to St. Sauveur or that they owed a duty to disclose the information to RIRRC.
However, following a review of the pleadings, the Court is satisfied that RIRRC has sufficiently alleged its claims against both VLC and Van Liew. RIRRC's Complaint clearly sets forth that (1) St. Sauveur was a fiduciary of RIRRC by virtue of his position as an RIRRC Commissioner; (2) St. Sauveur breached his fiduciary duty to RIRRC by failing to disclose the conflict created by his position on the VLTC and VLC Board of Directors; (3) VLC and Van Liew had knowledge that St. Sauveur was on VLTC and VLC's Board of Directors while simultaneously serving as a Commissioner of RIRRC; and (4) VLC and Van Liew participated in the breach by failing to disclose the conflict of interest despite the terms of the Contracts and their position as fiduciaries. See
Complaint ¶¶ 27-28, 44-45, 60, 85-92. Although Defendants allege that RIRRC has failed to set forth a claim because they were not parties to the Contracts and had no obligation to disclose the information to RIRRC, at this juncture the Court is satisfied that RIRRC has sufficiently pled its claims. Moreover, while VLC and Van Liew may not have had a contractual duty to disclose the conflicts to RIRRC, it is clear, in light of the Court's previous determinations, that under the fiduciary relationship alleged by RIRRC, they may have had a duty to act in RIRRC's best interest and to disclose the conflict.
Accordingly, in light of the foregoing, and for the reasons previously set forth, the Court finds that Defendants have failed to establish beyond a reasonable doubt that RIRRC would not be entitled to recover under any set of circumstances alleged in the Complaint. Consequently, the Court denies VLC and Van Liew's Motions to Dismiss as to Count III. *Page 18 
 D Count IV: Negligence
In their Motions to Dismiss, Defendants assert that because they were neither parties to the Contracts nor agreed to provide any services to RIRRC, RIRRC's professional negligence claim should be dismissed. Conversely, RIRRC contends that VLC and Van Liew owed RIRRC a separate and distinct duty of care in connection with their provision of administrative and investment services, which they subsequently breached through unsuitable investment choices and by failing to disclose a known conflict of interest.
It is axiomatic that the elements necessary to establish a claim for professional negligence are identical to those for ordinary negligence. See Cronan v. Iwon,972 A.2d 172, 173 (R.I. 2009); see also
Am. Jur. Negligence § 177 (2011). Therefore, to establish a cause of action for negligence, a party must allege four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of such duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage. SeeMedeiros v. Sitrin, 984 A.2d 620, 625 (R.I. 2009) (citingSantana v. Rainbow Cleaners, Inc.,969 A.2d 653, 658 (R.I. 2009)).
Here, the crux of Defendants' motions surrounds the first element — the existence of a duty between Plaintiff and the Defendants. Defendants contend that the lack of a contractual relationship with RIRRC is dispositive. However, as already indicated, the existence of a contract between the parties is not a prerequisite for the existence of a duty. SeeBullmore, 45 A.D.3d at 463, 846 N.Y.S.2d at 148. Rather, professionals, such as investment advisors, may be subject to tort liability for failing to exercise reasonable care, irrespective of their contractual duties. Id. *Page 19 
Therefore, in addition to adequately alleging proximate cause and damages, RIRRC has sufficiently pled the existence and breach of a duty. See Complaint ¶¶ 93-96. Indeed, RIRRC has not only alleged that VLC and Van Liew owed a duty of care in connection with the administrative and investment services they provided, but also that Defendants breached their duties through unsuitable investment choices and by failing to disclose a known conflict of interest.See id. ¶¶ 82-83, 94. Moreover, as previously set forth, Proposal No. 924 clearly indicates that both Van Liew and VLC would be part of the staffing responsible for investment management services. See Proposal No. 924. (indicating that VLC would meet with RISWMC and assess its investment risk parameters and Van Liew would be a principal person committed to managing and monitoring the performance of RISWMC's portfolios). Consequently, in light of the foregoing, and for the reasons previously articulated, the Court finds that Defendants have failed to establish beyond a reasonable doubt that Plaintiff would not be entitled to recover under any set of circumstances alleged, and hence, the Court denies their Motions to Dismiss as to Count IV of the Complaint.
 IV Conclusion
After due consideration of all the arguments advanced by counsel at the hearing and in their memoranda, the Court finds with respect to Counts I and V, that RIRRC has failed to set forth a set of circumstances by which the Court could impose personal liability upon Van Liew under the Contracts, and therefore, grants Van Liew's Motion to Dismiss as to those counts. However, for the reasons previously stated, the Court denies VLC's Motion to Dismiss as to the same. In connection with Counts II, III, and IV, the Court finds that both Van Liew and VLC have failed to establish beyond a reasonable doubt that RIRRC would not be entitled to recover *Page 20 
under any set of circumstances alleged; and consequently, the Court denies their Motions to Dismiss as to these claims.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] The Remediation Trust Fund was created in connection with a Consent Decree (Consent Decree) by and between RISWMC and the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency (EPA). See
Complaint ¶¶ 13-16; see also Consent Decree ¶ 49.
[2] According to RIRRC, the Closure Trust Fund was created to satisfy the EPA's requirement that solid waste landfill operators establish financial assurance for the cost of closing the landfill and maintaining the site for thirty years after it is closed.See Complaint ¶¶ 17-18.
[3] The RIRRC Board set VLTC's compensation at: twenty basis points (.20%) on the first $5,000,000, fifteen basis points (.15%) on the next $5,000,000, and ten basis points (.10%) on any amount above $10,000,000. See Complaint ¶ 43. VLTC's fee would be paid quarterly and would be calculated on the market value of the trust and other accounts at the end of the prior quarter.Id.
[4] The Remediation Trust Fund Agreement, 1996 Agreement, Closure Trust Fund Agreement, and Pension Plan Agreement shall hereinafter collectively be referred to as "Contracts."
[5] Although Plaintiff failed to attach Proposal No. 924 to the Complaint, where, as here, the document is not only integral to, but also explicitly relied upon in the Complaint, the document shall appropriately be considered and treated as if it were merged with the pleadings. See Roy,44 F. Supp. 2d at 107 (quoting Beddall, 137 F.3d at 17);see also Jorge, 404 F.3d at 559.
[6] Correspondingly, Plaintiff may not now present for the Court's consideration additional documents to support any alleged pleading deficiencies within its Complaint. Although the Court has indicated that, under the approach adopted by the First Circuit, it may, in limited circumstances, look beyond the facts alleged in the Complaint, where, as here, the exhibits appended to RIRRC's April 27, 2011 reply brief are neither expressly linked to or explicitly relied upon in the Complaint, the Court declines to consider them.
[7] Notably, the Pension Plan Agreement defined a fiduciary as:
 "any person who (a) exercised any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan." See Pension Plan Agreement ¶ 1.18.
 *Page 1