■ THEO BULLMORE et al., Appellants-Respondents, v ERNST & YOUNG CAYMAN ISLANDS, Respondent-Appellant, and ERNST & YOUNG LLP et al., Respondents, et al., Defendant. [846 NYS2d 145]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered April 19, 2006, which, to the extent appealed and cross-appealed from, denied the motion to dismiss

the first cause of action as against defendant Ernst & Young Cayman Islands (E & YCI), but granted dismissal of the second, third, seventh, eighth and ninth causes of action against defendants Ernst & Young LLP (E & Y LLP) and E & YCI, as well as the fifth cause of action against Beacon Hill Asset Management and individual defendants Barry, Daniels, Irwin and Miszkiewicz, unanimously modified, on the law, the fifth cause of action reinstated as against the individual defendants, and otherwise affirmed, without costs.

This matter arises out of the collapse of certain hedge funds as the result of a fraudulent valuation scheme. Specifically, defendant Beacon Hill was formed in January 1997 by the four individual defendants as a manager of hedge funds investing in mortgage-backed and related securities. In that connection, Beacon Hill was the manager of a so-called Master Fund, which held the investment assets of, and conducted trading for, three feeder hedge funds. Pursuant to an investment management agreement, Beacon Hill was to manage and value securities in the Master Fund's portfolio according to certain valuation procedures. It was, moreover, given nearly complete discretion in effecting transactions on the Master Fund's behalf, and its own compensation was derived, in part, from a pro rata share of the combined assets and performance of the Master Fund's portfolio, plus an incentive fee based on a percentage of the appreciation of the net asset value (NAV) of the Master Fund's securities.

Plaintiffs, who were appointed as joint liquidators of Beacon Hill, which is now winding up its business pursuant to the Companies Law of the Cayman Islands, have accused the individual defendants of concealing the extent of the Master Fund's losses until October 2002 by supposedly misrepresenting in offering memoranda and elsewhere that the NAVs would be calculated in good faith using independent prices. Indeed, during October and November 2002, the Master Fund's managers made a series of disclosures divulging that its NAVs had dropped from the values reported as of August 31, 2002, with each subsequent revelation imparting the information that the decline was greater than previously reported, until the final disclosure revealed that the NAVs had declined by more than 61%. The result was that Bear Stearns & Co., the Master Fund's prime broker and custodian, refused to provide any additional financing, and the Securities and Exchange Commission undertook an investigation of Beacon Hill's practices.

In November 2002, the Commission instituted suit against Beacon Hill and its four principals in federal court in the

Southern District of New York, where several other actions had also been commenced by investors and other parties due to the collapse of these funds. The instant action, which was brought in March 2005, asserts professional malpractice/negligence, and aiding and abetting the breach of fiduciary duty, against E & YCI and E & Y LLP; and breach of contract, breach of fiduciary duty/duty of care, negligence, and breach of duty/self-dealing against Beacon Hill (including its four principals). A series of motions resulted in dismissal of all but the claims for professional malpractice against E & YCI, breach of contract against Beacon Hill, and breach of duty/self-dealing against the Beacon Hill defendants other than Miszkiewicz. Plaintiffs and E & YCI appeal.

Plaintiffs allege in the fifth cause of action, for breach of fiduciary duty/duty of care, that the Beacon Hill defendants owed a fiduciary duty to the Master Fund that they breached by engaging in certain improper conduct. The motion court dismissed this claim as duplicative of the fourth cause of action for breach of contract against Beacon Hill. Plaintiffs contend that notwithstanding the similarity with conduct constituting breach of contract, a separate breach of a duty may also arise out of that contractual relationship. The investment managers, they argue, had an independent fiduciary obligation to exercise due care and diligence in their administration of the fund, and to ensure that they did not engage in any fraudulent or unsound investment practices.

Indeed, while causes of action for breach of fiduciary duty that merely restate contract claims must be dismissed (*see LaSalle Hotel Lessee, Inc. v Marriott Hotel Servs., Inc.*, 29 AD3d 464 [2006]), conduct amounting to breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract which is nonetheless independent of such contract (*see Sally Lou Fashions Corp. v Camhe-Marcille*, 300 AD2d 224, 225 [2002]). Professionals such as investment advisors, who owe fiduciary duties to their clients, "may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties," since in "these instances, it is policy, not the parties' contract, that gives rise to a duty of due care" (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 551-552 [1992]; *see also Bullmore v Banc of Am. Sec. LLC*, 485 F Supp 2d 464, 470-471 [SD NY 2007]). Accordingly, plaintiffs' allegations of fraud and breach of fiduciary duty/duty of care are not duplicative of the contract claim against Beacon Hill.

Nevertheless, the court appropriately dismissed the third

(against the E & Y defendants) cause of action for aiding and abetting the breach of fiduciary duty. To state such a claim, a plaintiff must plead a breach of fiduciary duty, that the defendant knowingly induced or participated in the breach, and damages resulting therefrom (see *Global Mins. & Metals Corp. v Holme*, 35 AD3d 93, 101 [2006], *lv denied* 8 NY3d 804 [2007]). Moreover, a "person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator" (*Kaufman v Cohen*, 307 AD2d 113, 126 [2003]). "Actual knowledge, as opposed to merely constructive knowledge, is required and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty" (*Global Mins. & Metals*, 35 AD3d at 101-102). In the absence of any allegation that the E & Y defendants had actual knowledge of the primary wrong or that these parties rendered substantial, as opposed to inadvertent, assistance to the underlying breach of fiduciary duty, the complaint does not advance a valid claim for aiding and abetting breach of fiduciary duty on their part.

Plaintiffs also challenge the dismissal of their second cause of action for professional malpractice/negligence against E & Y LLP. However, there was no contractual relationship between the Master Fund and E & Y LLP. "In the absence of a contractual relationship between the accountant and the party claiming injury, the potential for accountant liability is carefully circumscribed" (*William Iselin & Co. v Mann Judd Landau*, 71 NY2d 420, 424 n 1 [1988]). Furthermore, a viable cause of action for professional malpractice or negligence "requires that the underlying relationship between the parties be one of contract or the bond between them so close as to be the functional equivalent of contractual privity" (*Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417, 419 [1989]). "Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance" (*Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536, 551 [1985]).

It should be noted that the complaint does not allege E & Y

LLP was retained to be the Master Fund's auditor or, indeed, to furnish it with any services. On the contrary, it is asserted that E & YCI was the entity hired by the Master Fund. With respect to functional privity, the complaint does not claim that E & Y LLP ever issued an audit report or made any other statement concerning the Fund, and it is also silent as to any specific arrangement between the parties or the terms upon which they might have agreed. Consequently, the motion court properly dismissed the second cause of action for professional malpractice/negligence as against E & Y LLP.

We have considered the arguments by E & YCI for dismissal of the claim against it for professional malpractice/negligence, including matters raised at oral argument that are dehors the record, and find them unavailing at this juncture. Concur—Lippman, P.J., Friedman, Sullivan, Gonzalez and Catterson, JJ. [*See* 2006 NY Slip Op 30069(U).]