13-1634-cv
Williams Trading LLC v. Wells Fargo Securities, LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall Courthouse, 40 Foley Square, in the City of New York, on the 27th day of January, two thousand fourteen.

Present:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> RICHARD C. WESLEY,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*.

---

WILLIAMS TRADING LLC,

>*Plaintiff-Appellant*,

>v.                                                    No. 13-1634-cv

WELLS FARGO SECURITIES, LLC,

>*Defendant-Appellee*.

---

For Plaintiff-Appellant:     JEFFREY M. NORTON, Newman Ferrara LLP, New York, NY

For Defendant-Appellee:     DAVID C. BOHAN, Katten Muchin Rosenman LLP, Chicago, IL
(Aharon S. Kaye, Katten Muchin Rosenman LLP, Chicago, IL, and Emily Stern, Katten Muchin Rosenman LLP, New York, NY, *on the brief*)

Appeal from the United States District Court for the Southern District of New York (Forrest, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Williams Trading LLC ("Williams") appeals from a judgment entered on April 29, 2013 by the United States District Court for the Southern District of New York (Forrest, *J.*), which dismissed Williams's claims against Defendant-Appellee Wells Fargo Securities, LLC ("Wells Fargo") for breach of fiduciary duty, breach of contract, and other related state-law causes of action, for failure to state a claim. Williams's claims arise out of an agreement whereby Williams was to refer clients to a newly created U.S. listed options trading desk at Wells Fargo in exchange for a referral fee equal to a percentage of the desk's net revenues (the "Agreement"). Williams alleges that Wells Fargo used funds from that venture to engage in proprietary trading—*i.e.*, trading for the bank's own account, rather than for clients. On appeal, Williams argues that the district court erred in dismissing Williams's claims for breach of fiduciary duty and breach of contract. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented for review.

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim *de novo*, "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Turning first to Williams's claim for breach of fiduciary duty, the elements of such a claim are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). With respect to the first element, "[a] fiduciary relationship exists under New York law 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (App. Div. 1st Dep't 1987) (second alteration in original).

Williams first argues that Wells Fargo owed Williams fiduciary duties because the Agreement created a joint venture. But among the requirements necessary to form a joint venture under New York law are (1) that the parties' agreement "evidence their intent to be joint venturers," (2) that each party "have some degree of joint control over the venture," and (3) that there be "a provision for the sharing of both profits and losses." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990)). These elements are absent here. The Agreement shows no intent to form a joint venture—to the contrary, it expressly provides that it is not intended to form a "partnership" of any kind and that Wells Fargo's relationship to Williams is that of an "independent contractor." The Agreement also gives Williams no right of control over the new desk, and indeed, Williams affirmatively alleges that Wells Fargo quickly cut Williams out of the desk's decisionmaking processes altogether. Furthermore, while the Agreement permits Williams to share in the new desk's profits, it does not require Williams to share in the risk of loss. Rather, the Agreement expressly provides that if the desk loses money,

3

that loss will be borne by Wells Fargo alone.  As the Appellate Division, Second Department has explained, "[a]n individual who has no proprietary interest in a business except to share the profits as compensation for services is not a joint venturer." *De Vito v. Pokoik*, 540 N.Y.S.2d 858, 859 (App. Div. 2d Dep't 1989).

Williams also argues that it was owed fiduciary duties because Wells Fargo maintained control over the new desk's profits, a portion of which (measured by reference to the desk's net revenues) was owed to Williams as its referral fee. Williams contends that this control over the parties' joint funds placed Wells Fargo in a position of trust and confidence analogous to an investment adviser who invests funds on a client's behalf. *See Bullmore v. Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 148 (App. Div. 1st Dep't 2007) (noting that such advisers owe fiduciary duties). This argument, however, rests on a faulty premise—namely, that the desk's profits were owned in part by Williams. In fact, because the desk was wholly owned and operated by Wells Fargo, the desk's profits belonged solely to Wells Fargo. Nothing in the Agreement gave Williams any security interest or other entitlement to the desk's profits themselves. Wells Fargo was not required to pay Williams's fee out of the desk's profits, and conversely, Williams would not have been limited to those profits if it sought to recover unpaid fees. Wells Fargo thus was investing its own funds, entirely unlike a fiduciary exercising control over the funds of another.

As to its claim for breach of contract, Williams points to two provisions of the Agreement that supposedly prohibited proprietary trading by Wells Fargo. First, Williams points to paragraph 14, which Williams contends incorporated an internal Wells Fargo policy manual that in turn prohibits proprietary trading by client-facing desks like the one contemplated by the

4

Agreement. Paragraph 14, however, is merely a non-disparagement clause, which by its plain terms simply prohibits each party from "mak[ing] any misrepresentations regarding the other or its brokerage services that are false or misleading or in any way inconsistent with the written materials provided to it by the other." J.A. 82. Even if Wells Fargo's internal policy manual prohibits proprietary trading by the new desk, paragraph 14 does not incorporate that manual wholesale into the Agreement.

Second, Williams points to paragraph 2, which defines the "Net Revenues" upon which Williams's referral fee is based. In particular, Williams points to a sentence that excludes from Net Revenues "any profit generated by a proprietary trading desk of Wells Fargo as a result of trading in U.S. listed options." J.A. 74. Williams asserts that it is "inconceivable that [the parties] would at once exclude proprietary trading profits and simultaneously allow proprietary trading to take place." Appellant's Br. at 37. This argument fails on multiple levels. To begin with, this provision excludes from Net Revenues only those profits "generated by a proprietary trading desk of Wells Fargo"—i.e., desks separate and distinct from the U.S. listed options trading desk created in connection with the Agreement. Moreover, paragraph 2 by its terms determines only how Williams's referral fee is calculated, and does not purport to govern the new desk's trading activities, including whether or not it could engage in proprietary trading. It is well established that "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (quoting *Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001)).

Finally, Williams argues that the district court's rulings on Williams's breach of fiduciary duty and breach of contract claims are in conflict. According to Williams, if the Agreement gave Wells Fargo unfettered discretion to use desk funds for proprietary trading, then Wells Fargo must have had a fiduciary duty to use that discretion responsibly; conversely, if Wells Fargo had no such duty, then the Agreement must have prohibited proprietary trading. But this argument again incorrectly assumes that the new desk's funds were owned jointly rather than by Wells Fargo alone. No fiduciary duty arises from Wells Fargo's control over its own funds. And to the extent Williams now believes that the lack of fiduciary duties exposed Williams to an unacceptable risk that Wells Fargo would engage in perilous proprietary trading, that position is not embodied in the parties' unambiguous written agreement. "Under New York law, . . . a court must enforce [a contractual term's] plain meaning, '[r]ather than rewrite an unambiguous agreement." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (quoting *American Express Bank Ltd. v. Uniroyal*, 562 N.Y.S.2d 613, 614 (App. Div. 1st 1990)) (final alteration original).

We have considered all of Williams's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6