■ PANATTONI DEVELOPMENT COMPANY, INC., Respondent, v SCOUT FUND 1-A, LP, et al., Defendants/Third-Party Claimants-Appellants. PANATTONI DEVELOPMENT COMPANY, INC., et al., Third-Party Defendants-Respondents. [63 NYS3d 325]—

Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered August 29, 2016, which granted the motion of counterclaim and third-party defendants (together, Panattoni) to dismiss the sixth counterclaim and third-party claim (fraud) pursuant to CPLR 3211, unanimously affirmed. Order (same court, Justice, and entry date), which granted Panattoni's motion for summary judgment, unanimously modified, on the law, to deny so much of the motion as sought summary judgment on the complaint and dismissal of the first and second counterclaim and third-party claims (declaratory judgment and breach of contract, respectively), and otherwise affirmed, without costs.

Defendants/counterclaim and third-party plaintiffs (Scout) raised a triable issue of fact as to whether California State Teachers Retirement System (CalSTRS) used Principal Real Estate Investors LLC as an investment manager with respect

to two joint ventures (PanCal and CP) between CalSTRS and Panattoni. Panattoni's argument that Scout has no standing to challenge CalSTRS' and Principal's interpretation of the investment management contract between them is unavailing, as it looks at the wrong contract. Scout alleges that plaintiff breached a contract—the Limited Liability Company Agreement of PI Management, LLC (LLC Agreement)—to which Scout and plaintiff are parties. The LLC Agreement includes the clause, "where the investor [CalSTRS or the subsidiaries it used for the PanCal and CP joint ventures] . . . has not engaged and is not utilizing with respect to such investment [PanCal and CP] a third party investment manager." Thus, the issue of whether CalSTRS used Principal as its investment manager with respect to PanCal and CP is a question of interpreting the LLC Agreement, to which Scout is a party.

Panattoni points out that "investment manager" is not a defined term in the LLC Agreement. However, as Scout notes, an Investment Management Agreement was entered into on the same day as the LLC Agreement. Therefore, it is appropriate to look at the Investment Management Agreement to see what the parties meant by "investment manager" (*see BWA Corp. v Alltrans Express U.S.A.*, 112 AD2d 850, 852 [1st Dept 1985]).

It is not true that Scout relied solely on testimony from its expert and representatives from its parent to oppose Panattoni's summary judgment motion. On the contrary, to cite just two examples, a report of CalSTRS' Investment Committee listed Principal as an "Independent Fiduciary" with respect to PanCal, and an email from plaintiff to CalSTRS and Principal compared the services it provided to PanCal with those it provided to a fund of which it was undisputedly the investment manager.

Scout contends that its claim for breach of the duty of good faith and fair dealing (third counterclaim/third-party claim) is not duplicative of its contract claim. It argues that even if PanCal and CP were not PI Programs (i.e., even if CalSTRS used Principal as its investment manager with respect to PanCal and CP), Panattoni acted in bad faith by not structuring them under PI Management, LLC (PIM). However, in its contract claim, Scout alleges that Panattoni breached the Scout Fund Master Agreement for PI Management, LLC (Master Agreement), which prohibits Panattoni from conducting any investment management business other than through PIM. Hence, the good faith and fair dealing claim *is* duplicative of the contract claim.

Scout contends that its unjust enrichment claim (fourth counterclaim/third-party claim) should survive until trial so that it can be considered in the alternative if the factfinder determines that the parties' contracts do not cover their dispute. This argument is unavailing. No one claims that the LLC and Master Agreements do not cover the parties' dispute. Therefore, the court properly dismissed the unjust enrichment claim (*see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388-389 [1987]).

Scout contends that its fiduciary duty claim (fifth counterclaim/third-party claim) is not duplicative of its contract claim. We are not persuaded.

The contract claim alleges breaches of two contracts: the LLC Agreement, which is governed by Delaware law, and the Master Agreement, which is governed by New York law. Scout alleges that plaintiff owes it a fiduciary duty as the managing member of PIM, a Delaware limited liability company. Therefore, we consider Delaware law on the issue of whether Scout's fiduciary duty claim is duplicative of its claim that plaintiff breached the LLC Agreement.

"[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous" (*Nemec v Shrader*, 991 A2d 1120, 1129 [Del 2010]). That is the case here: Scout's fiduciary duty claim arises out of the same facts that underlie its claim that plaintiff breached the LLC Agreement, viz., plaintiff's failure to disclose the scope of PanCal and failing to timely disclose CP.

As for the Master Agreement, the parties have not briefed which law applies to the issue of whether a breach of fiduciary duty under Delaware law is duplicative of a contract claim under New York law. If Delaware law applies, Scout's claim that plaintiff breached its fiduciary duty as managing member of PIM is duplicative of its claim that plaintiff breached the Master Agreement: both are based on plaintiff's conducting investment business outside of PIM.

If New York law applies, Scout relies on *Bullmore v Ernst & Young Cayman Is.* (45 AD3d 461 [1st Dept 2007]), which says, "conduct amounting to breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract which is nonetheless independent of such contract" (*id.* at 463). Immediately thereafter, however, *Bullmore* said, "*Professionals such as investment advisors, who*

*owe fiduciary duties to their clients*, may be subject to tort liability . . . , since in these instances, it is policy, not the parties' contract, that gives rise to a duty" (*id.* [emphasis added and internal quotation marks omitted]). Scout is not suing plaintiff qua professional investment advisor; rather, Scout is suing it as managing member of PIM, a relationship that was created by the parties' contract (the LLC Agreement).

The fraud claim alleges that Panattoni omitted to tell Scout about the CP transaction, intending for it to issue a buy-out notice omitting that transaction. However, as Panattoni pointed out below, Scout could have obviated its damages by amending the notice to include CP. More fundamentally, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" (*Clark-Fitzpatrick*, 70 NY2d at 389). Panattoni's duty to disclose CP arose from contract (the LLC and Master Agreements). Furthermore, "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory" rather than a tort theory (*Sommer v Federal Signal Corp.*, 79 NY2d 540, 552 [1992]). Concur—Manzanet-Daniels, J.P., Mazzarelli, Moskowitz, Kahn and Kern, JJ.