ALP, Inc. v Moskowitz (2022 NY Slip Op 02355)

ALP, Inc. v Moskowitz

2022 NY Slip Op 02355

Decided on April 12, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 12, 2022

Before: Kapnick, J.P., Singh, Moulton, Shulman, Higgitt, JJ. 

Index No. 652326/19, 153949/19 Appeal No. 15127 Case No. 2020-04600, 2020-04833 

[*1]ALP, Inc., et al., Plaintiffs-Respondents-Appellants,
v
Lawrence Moskowitz et al., Defendants, Bender Ciccotto & Company CPA's, LLP, et al., Defendants-Appellants-Respondents.
ALP, Inc., Plaintiff-Respondent-Appellant,
v
Park West Galleries, Inc., et al., Defendants-Appellants-Respondents.

Vedder Price P.C., New York (Daniel C. Green of counsel), for Bender Ciccotto & Company CPA's, LLP, Robert M. Frank and Robert J. Frank, appellants-respondents.
Clarick Gueron Reisbaum LLP, New York (Gregory A. Clarick of counsel), for Gene Luntz and Gene Luntz Management, Inc., appellants-respondents.
McCuster, Anselmi, Rosen & Carvelli, P.C., New York (Michael R. Futterman of counsel), and Coffee Burlington, P.L., Miami, FL (Paul J. Schwiep and Jeffrey B. Crockett of the bar of the State of Florida, admitted pro hac vice, of counsel), for Park West Galleries, Inc., appellant-respondent.
Schlam Stone & Dolan LLP, New York (Jeffrey M. Eilender of counsel, for respondents-appellants.

Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered on or about November 12, 2020, which, insofar as appealed from, denied the motion of defendants Bender, Ciccotto & Company CPA's, LLP, Robert M. Frank (Frank), and Robert J. Frank (Frank Jr.) (collectively, the Bender Ciccotto defendants) to compel arbitration, denied defendants Gene Luntz (Luntz) and Gene Luntz Management, Inc.'s (collectively, the Luntz defendants) motion to dismiss the claims as against them pursuant to CPLR 3211(a)(1) and (7), and denied defendant Park West Galleries, Inc.'s motion to dismiss the claims as against it pursuant to CPLR 3211(a)(1), (4), (5), and (7), unanimously modified, on the law, to grant defendants' motions to dismiss the cause of action for civil conspiracy, and to grant the Luntz defendants' motions to dismiss the conversion and breach of fiduciary duty claims as against them (the first and third causes of action, respectively, in index no. 652326/19 and the third cause of action in index no. 153949/19) insofar as they concern commissions paid before April 16, 2016, the first cause of action in index no. 652326/19 insofar as it alleges that Luntz aided and abetted the other defendants' conversions of ALP's funds or assets other than Peter's Keepers,[FN1]the third cause of action in index no. 652326/19 insofar as it alleges that Luntz aided and abetted defendant Lawrence Moskowitz and the Bender Ciccotto defendants' breaches of fiduciary duty with respect to ALP's funds or assets other than the Keepers, the fourth cause of action in index no. 652326/19 insofar as it alleges that Luntz committed fraud with respect to his receipt of commissions and by failing to disclose the misappropriation of funds and artwork (other than the Keepers) by the other defendants, and the replevin claim as against Luntz, and otherwise affirmed, without costs.
Nonparty Peter Max, a world-renowned artist, formed plaintiff ALP, Inc. in 2000 so that he and his two children, defendant Adam Max and plaintiff Libra Max, could control the sale and commercialization of his artwork. These actions arose when Peter Max became too ill to run ALP and the parties became embroiled in disputes over the management and control of the company, as well as the sale of Peter Max's artwork. As relevant to this appeal, both actions allege misconduct by Bender Ciccotto, ALP's accountant; Frank, Bender Ciccotto's managing partner, and Frank Jr., Frank's son; Luntz, an artist's representative, and his company Gene Luntz Management; and Park West, a gallery that bought and sold Peter Max's art. In both the Bender Ciccotto and the Park West actions, ALP interposes causes of action for, among other things, conversion, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and replevin. In the Bender Ciccotto action, ALP and Libra Max also interpose a cause of action for civil conspiracy against all defendants.
The contract between ALP and Bender Ciccotto provides that "any dispute [*2]over fees" will be arbitrated. Not all of plaintiffs' claims involve a dispute over fees. Plaintiffs allege, for example, that Bender Ciccotto's bills were bloated, and they provide four single-spaced pages of details. They also complain that Frank charged $5,355 per hour in September 2014 and that Frank Jr.'s billing rate increased from $125 to $214.60 per hour between February and March 2013. However, plaintiffs also make allegations having nothing to do with fees - for example, that Frank breached his fiduciary duty to ALP by placing Frank Jr. in charge of ALP's warehouse, where he could oversee the alleged theft of artwork, and that Frank and Bender Ciccotto committed malpractice by failing to take advantage of a certain deduction and failing to file ALP's tax returns for three years.
Contrary to the Bender Ciccotto defendants' contention, the question "[w]hether a dispute is arbitrable is generally an issue for the court to decide unless the parties clearly and unmistakably provide otherwise" (Zachariou v Manios, 68 AD3d 539, 539 [1st Dept 2009], citing Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 45-46 [1997]). In view of the arbitration clause's narrowness, the reference to the American Arbitration Association rules does not constitute "clear and unmistakable evidence" of the parties' intent to have an arbitrator decide the issue of arbitrability (id.). Further, as the arbitration clause covers fees only, plaintiffs cannot be compelled to arbitrate other matters (see Matter of Eastern Mins. Intl., Inc. v Cane Tenn., 274 AD2d 262, 266 [1st Dept 2000], lv denied 96 NY2d 702 [2001]; compare with Fairfield Towers Condominium Assn. v Fishman, 1 AD3d 252, 253 [1st Dept 2003] [where arbitration clause covered "'all differences arising between the parties . . . as to interpretation, application or performance of any part of this agreement,'" all ambiguities as to whether a claim was covered were to be resolved in favor of arbitrability]).
Supreme Court correctly recognized that, notwithstanding allegations that Bender Ciccotto charged ALP fraudulent or inflated fees for their accounting services, the gravamen of plaintiffs' claims against them is that Frank, as a de facto officer of ALP, breached his fiduciary duties by allegedly "looting" corporate assets, engaging in self-dealing, and conspiring with the codefendants to dominate ALP to its detriment. Since the nonarbitrable claims are inextricably intertwined with the arbitrable claims, all the claims should be resolved in a single forum (see Wien & Malkin v Helmsley-Spear, Inc., 307 AD2d 808, 809 [1st Dept 2003]; Young v Jaffe, 282 AD2d 450, 450-451 [2d Dept 2001]). Here, Supreme Court is the proper forum (see generally Brennan v A.G. Becker, Inc., 127 AD2d 951, 953 [3d Dept 1987] [inextricably bound arbitrable and nonarbitrable claims "should be litigated in the court action which has already been commenced"]).
Given our determination, we need not address the merits of Bender Ciccotto's [*3]request for a stay pending arbitration.
The fifth cause of action in index no. 652326/19 should be dismissed because there is no cause of action for conspiracy to commit a tort (Alexander & Alexander of N.Y. v Fritzen, 68 NY2d 968, 969 [1986]).
The Luntz defendants contend that the voluntary payment doctrine bars ALP from clawing back any of the commissions it paid them. However, plaintiffs allege that "Luntz's 'commissions' were always paid as soon as a Park West wire came in — long before these payments were reconciled against any sale." Thus, we cannot conclude as a matter of law that ALP's payments were "voluntarily made with full knowledge of the facts" (Dillon v U-A Columbia Cablevision of Westchester, 100 NY2d 525, 526 [2003]).
The Luntz defendants also contend that the absence of a special agreement between them and ALP bars ALP from recovering the commissions it paid them (see Kleinfeld v Roburn Agencies, Inc., 270 AD 509, 511 [1st Dept 1946]). However, if an employee "is paid without knowledge of his disloyalty[,] he may be compelled to return what he has improperly received" (Harry R. Defler Corp. v Kleeman, 19 AD2d 396, 404 [4th Dept 1963], affd 19 NY2d 694 [1967]). Similarly, in a decision more recent than Kleinfeld, we concluded that an employee "is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties" and "forfeits his right to compensation for services rendered by him if he proves disloyal" (Maritime Fish Prods. v World-Wide Fish Prods., 100 AD2d 81, 88 [1st Dept 1984], appeal dismissed 63 NY2d 675 [1984] [citation and internal quotation marks omitted]). Plaintiffs allege that Luntz allowed Park West to dictate the prices that it would pay for ALP's art; thus, they allege he was not acting with utmost good faith and loyalty on ALP's behalf. With all inferences drawn in plaintiffs' favor, as required on a CPLR 3211 motion, it could be found that ALP paid commissions without knowledge of this disloyalty. Indeed, plaintiffs allege that Adam Max - ALP's president and CEO at the time - had various physical and mental health issues that led him to abdicate his responsibilities and allow Luntz, Frank, and Moskowitz to run ALP.[FN2]
In addition, the Luntz defendants assert that plaintiffs are judicially estopped from arguing that Luntz exercised undue influence over Adam. However, plaintiffs' current position is not "directly contrary" to their prior position (Estate of Shefner v Beraudiere, 127 AD3d 442, 442 [1st Dept 2015]). Moreover, the Luntz defendants did not show that plaintiffs previously prevailed by taking the position that Adam had sole control of ALP, as opposed to taking the position that he was dominated by Moskowitz, Frank, and Luntz (see Becerril v City of N.Y. Dept. of Health & Mental Hygiene, 110 AD3d 517, 519 [1st Dept 2013], lv denied 23 NY3d 905 [2014]; Matter of Stewart v Chautauqua County Bd. of Elections, 14 NY3d 139, 149-150 [2010]).
The Luntz defendants contend that plaintiffs [*4]fail to plead undue influence. However, as the motion court explained, the complaint alleges the requisite motive and opportunity, as well as the actual exercise of the undue influence (see Matter of Kotick v Shvachko, 130 AD3d 472, 473 [1st Dept 2015]). Further, although the Luntz defendants contend that ALP's and Luntz's motives were aligned, Libra Max said in one of her affidavits, "[I]t hurts [ALP] to flood the market . . . . [W]hile there may be short term gains to selling in . . . high volume, that strategy drives down the long-term value of Peter Max artwork." The Luntz defendants point out, accurately, that the complaint does not allege that Luntz directed threats, physical violence, intimidation, and bullying at Adam. However, this case is still at an early prediscovery stage. "As direct proof of undue influence is rare, its elements may be established by circumstantial evidence" (Kotick, 130 AD3d at 473).
As to Adam's decision to pay a 15% commission, the Luntz defendants assert that the decision is protected by the business judgment rule. However, at this stage of the litigation, we cannot so conclude as a matter of law (see Lemle v Lemle, 92 AD3d 494, 497 [1st Dept 2012]).
The Luntz defendants are correct that conversion claims with respect to commissions paid before April 16, 2016, three years before the commencement of index no. 153949/19, are time barred (see e.g. Vigilant Ins. Co. of Am. v Hous. Auth. of City of El Paso, Tex., 87 NY2d 36, 44 [1995]). Although plaintiffs contend that the Luntz defendants should be equitably estopped from raising the statute of limitations, the complaint does not allege that the Luntz defendants induced plaintiffs "to refrain from suit by fraud, misrepresentations or deception" (U.S. Educ. Loan Trust IV, LLC v Bank of N.Y. Mellon, 179 AD3d 447, 450 [1st Dept 2020]). At most, plaintiffs have alleged that Frank and Adam thwarted Libra's attempts to obtain information about ALP.
Claims for Luntz's breach of fiduciary duty with respect to commissions paid before April 16, 2016 are similarly time-barred. The statute of limitations for breach of fiduciary duty is three years where a plaintiff seeks "purely monetary" damages and six years where equitable relief is sought (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 139 [2009]). Here, the third cause of action in the amended complaint in the Bender Ciccotto action primarily seeks monetary damages as to Luntz for unearned commissions (see Access Point Med., LLC v Mandell, 106 AD3d 40, 44 [1st Dept 2013] [the plaintiffs' demand for the return of attorneys' fees paid to the defendants is a claim for monetary damages despite their characterization of it as seeking the equitable remedy of disgorgement]). Accordingly, the three-year statute of limitations applies.
Notwithstanding ALP's contention that the statute of limitations was tolled until Luntz openly repudiated his obligations or the fiduciary relationship terminated upon Libra taking control [*5]of ALP in early 2019, "the open repudiation doctrine . . . applies only to claims for accounting or equitable relief" (Stern v Morgan Stanley Smith Barney, 129 AD3d 619, 619 [1st Dept 2015]). Here, plaintiffs seek only monetary damages against Luntz for breach of fiduciary duty (Matter of Yin Shin Leung Charitable Found. v Seng, 177 AD3d 463, 464 [1st Dept 2019] ["the open repudiation toll doctrine does not apply to the claims asserted for money damages"]).
The replevin claim should be dismissed as against Luntz. To the extent plaintiffs seek the return of commissions — that is, "ordinary currency" - no replevin claim lies (Heckl v Walsh, 122 AD3d 1252, 1254 [4th Dept 2014] [internal quotation marks and brackets omitted]). To the extent plaintiffs seek the return of artwork, the claim fails because the complaint does not allege that Luntz is or ever was in possession of any artwork.
The fourth cause of action (actual and constructive fraud) in index no. 652326/19 should be dismissed insofar as it alleges that Luntz committed fraud with respect to his receipt of commissions and by failing to disclose the other defendants' alleged misappropriation of funds and artwork (other than the Keepers). These claims are not pleaded with sufficient particularity (see CPLR 3016[b]). Although a nondisclosure can be "juridically equivalent to a misrepresentation" (Schoen v Martin, 187 AD2d 253, 254 [1st Dept 1992], citing Callahan v Callahan, 127 AD2d 298, 300 [3d Dept 1987]), in index no. 652326/19, the only nondisclosure that the fraud claim alleges as to Luntz (at paragraph 338) has nothing to do with his commissions.
With respect to his alleged failure to disclose the other defendants' misappropriation of funds and art (other than the Keepers), the complaint contains no specific factual allegations that Luntz knew of any such misappropriation. Moreover, paragraph 338 "plead[s] against all defendants collectively without any specification as to the precise tortious conduct charged to a particular defendant" (Aetna Cas. & Sur. Co. v Merchants Mut. Ins. Co., 84 AD2d 736, 736 [1st Dept 1981]; see also CPLR 3016[b]).
The first cause of action (aiding and abetting conversion) in index no. 652326/19 should be dismissed insofar as it alleges that Luntz aided and abetted the other defendants' conversion of ALP's funds or assets other than the Keepers. The complaint does not allege that Luntz had the requisite knowledge of Moskowitz's and the Bender Ciccotto defendants' conversions of funds or assets other than the Keepers (see Lenczycki v Shearson Lehman Hutton, Inc., 238 AD2d 248, 248 [1st Dept 1997], lv dismissed in part, denied in part 91 NY2d 918 [1998]; Weisman, Celler, Spett & Modlin v Chadbourne & Parke, 271 AD2d 329, 330 [1st Dept 2000], lv denied 95 NY2d 760 [2000]).
Similarly, the third cause of action (breach of fiduciary duty and aiding and abetting breach of fiduciary duty) in index no. 652326/19 should be dismissed insofar as it alleges that Luntz aided and abetted Moskowitz and the Bender Ciccotto defendants' breaches of fiduciary duty with respect to ALP's funds or assets other than the Keepers. The complaint does not allege that Luntz had actual knowledge of these defendants' breaches of fiduciary duty (see Bullmore v Ernst & Young Cayman Is., 45 AD3d 461, 464 [1st Dept 2007]).
On the other hand, with respect to Adam, the amended complaint sufficiently alleges that Luntz aided and abetted Adam's breach of his fiduciary duty to ALP by granting Luntz control over ALP's sales and merely rubber stamping his alleged self-dealing transactions. Plaintiffs claim that Luntz aided and abetted this breach of fiduciary duty by inducing Adam to approve payments of allegedly unauthorized and unearned commissions to him, for which plaintiffs claim there was no legal or contractual basis, for art sales and Peter's appearances at galleries. Plaintiffs further allege that Adam breached his fiduciary duty to ALP by significantly increasing the volume of sales to Park West at deeply discounted prices, all at Luntz's urging. Under these circumstances, plaintiffs have sufficiently pleaded that Luntz "knowingly induced or participated in the breach" and provided "substantial assistance" to Adam's breach of his fiduciary duties (see id.).
Park West contends that ALP failed to state claims for conversion and replevin because Park West bought the Keepers. However, this argument assumes that the sale was valid (see e.g. Reif v Nagy, 175 AD3d 107, 125 [1st Dept 2019], lv dismissed 35 NY3d 986 [2020] [upholding conversion and replevin claims against a defendant who had bought Nazi-looted works of art]). ALP should be given the opportunity to prove that Adam's sale of the Keepers was unauthorized (see Hardin v Morgan Lithograph Co., 247 NY 332, 339 [1928]).Moreover, Scharf v Idaho Farmers Mkt., Inc. (115 AD3d 500 [1st Dept 2014]) suggests that if the party in Park West's position actually knew that the person in Adam's position lacked authority, this would "create a factual dispute" (id. at 501). ALP alleges that "Park West knew . . . that Adam did not have the authority to authorize [the Keepers] transaction" and alleges specific facts in support of the allegation.
If the sale to Park West is ultimately found to be authorized, then the claim that Park West aided and abetted Luntz's breach of fiduciary duty should be dismissed. However, Park West's arguments for dismissing the aiding and abetting claim at this stage are not persuasive. Contrary to Park West's suggestion, its liability is not based on the fact that it did not report Luntz's actions to ALP; rather, ALP alleges that Park West "provide[d] substantial assistance to the primary violator" (Kaufman v Cohen, 307 AD2d 113, 126 [1st Dept 2003] [internal quotation marks omitted]) because its purchase of the Keepers "enabl[ed] the breach to occur" (id.).
Park West makes the policy argument that a buyer in an arm's length commercial transaction should not be [*6]placed at risk of tort liability based on a failure to police the other party's internal authority. This argument is unpersuasive. First, it is far from clear that the Keepers sale was an arm's length transaction; ALP alleges that Luntz let Park West set the price it wanted to pay. Second, Park West is not a one-time buyer; it has
dealt with Peter or ALP, or both, since the early 1970s. Third, ALP alleges that Park West "was highly knowledgeable about [it] and what was occurring with its management" because Luntz kept it abreast of events. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: April 12, 2022

Footnotes

Footnote 1: Peter's Keepers (the Keepers) were nonparty artist Peter Max's preferred artworks, which he intended to be kept for his family.

Footnote 2: Defendants Lawrence and Lauren Moskowitz have withdrawn their appeals.